GEORGE MILLER, Appellee, v. GARDNER & LINDBERG et al.,
Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings by Commissioner—Conclusiveness. The industrial commissioner, in

determining a question of fact, i. e., whether an employee was injured *"in the course of his employment,"* need not accept the testimony of the servant simply because no other witness has testified directly to the contrary, but may weigh and test such testimony in the light of those matters and things bearing on its credibility; and the final determination of the commissioner, on supporting evidence, is *conclusive* on the courts. So held where the servant claimed to have been injured in the presence of several other employees, but said nothing about the injury at the time, and was not altogether consistent in his statements as to his injury.

*Appeal from Dubuque District Court.*—J. W. KINTZINGER, Judge.

JANUARY 11, 1921.

IN the district court, this was an appeal by the claimant under the Workmen's Compensation Act from a finding by the industrial commissioner adverse to the claimant. The trial court reversed the order of the industrial commissioner, and fixed the compensation of the claimant. The defendant has appealed.—*Reversed.*

*Chandler Woodbridge*, for appellants.

*Frantzen, Bonson & Gilloon*, for appellee.

EVANS, C. J.—The plaintiff was in the employ of the defendant, during which time he came under, disability which resulted in loss of time of many weeks. His claim was that such disability resulted from an injury sustained by him in the course of his employment. That the claimant was an employee of this defendant, and that he did become disabled during the period of his employment, is without dispute. The crucial question is whether such disability resulted from any injury suffered by the plaintiff in the course of his employment. The finding of the arbitration committee and of the industrial commissioner was adverse to him. From such adverse finding he appealed, and his claim was sustained in the district court. The statute provides as follows:

"The findings of fact made by the industrial commissioner within his powers shall, in the absence of fraud, be conclusive; but upon such hearing the court may confirm or set aside such order or decree of the industrial commissioner, if he finds:

"(1)    That the industrial commissioner acted without or in excess of his powers; or

"(2)    That the order or decree was procured by fraud; or

"(3)    That the facts found by the industrial commissioner do not support the order or decree.

"(4)    That there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the order or decree complained of.

"No order or decree of the industrial commissioner shall be set aside by the court upon other than the grounds just stated." Section 17, Chapter 270, Acts of the Thirty-seventh General Assembly.

The trial court held that the record would not permit a reversal of the order of the industrial commissioner upon any one of the first three grounds above quoted. It based its reversing order on the fourth ground above quoted. The discussion here, therefore, will be directed to such fourth ground.

According to the claimant's evidence as a witness, his injury occurred on Saturday, December 21, 1918. He was one of a group of men engaged in unloading a car. The group contained from 7 to 10 men. A crowbar in his hands slipped in such a way that the end thereof struck him in the left groin. He continued his work throughout that day and throughout the Monday following, and worked for a time on Tuesday, at which time he reported his injury, and was sent to the doctor. The doctor, Bigelow, found a condition which seemed to baffle diagnosis. There was an extensive suppuration and breaking down of the tissues, with no external evidence of injury. Dr. Slattery also aided in the care of the patient. Operations for hernia were performed both on the right side and on the left. The suppuration was so persistent that the doctors found it almost impossible to heal the surgical wounds. The theory upon which the case was reversed in the district court was that the testimony of the claimant himself and that of Dr. Bigelow were conclusive, in that there was no evidence contradictory thereto. It is true

that the claimant testified to his injury, as already stated. It is also true that the accident or injury, if such, occurred in the presence of his fellow workmen, 7 to 10 in number, and that no one of them saw or heard anything to indicate that such an accident had happened. The explanation of this is that the blow was so slight that the claimant thought nothing of it, and did not mention it. While this is an appropriate explanation, it will not do to say that the fact that no one else observed the accident, and that the claimant himself did not mention it, was without probative effect as tending to negative the plaintiff's claim. It was evidence competent as a matter of law, and it did tend to reduce the weight and credibility of the claimant's testimony. One of claimant's witnesses at the hearing was Linehan, the timekeeper. The claimant made his first complaint to this witness on Tuesday. His statement to Linehan was not that he was struck in the groin, but "across the middle of the thigh." This evidence was also contradictory of the claimant's testimony, and tended to negative it. The testimony of Dr. Bigelow which is relied upon as being conclusive, was summed up in the following statement of his direct examination:

"I couldn't find anything that would indicate that he was suffering from something else besides what he related to me. The suppuration may have started from an external injury, but the report of the pathologist was simply a breaking down of the tissues, so it might have come from the bruise—rather unusual. The treatment which I gave him was the only treatment I know of. During all this treatment, I had other physicians come in when I was dressing him."

On cross-examination, he testified:

"I used the word 'unusual'—I mean that the suppuration was unusual. The pathologist said this was just an inflammatory breaking down of the tissues; she couldn't make anything out of it, so far as any infection was concerned—simply an inflammatory breaking down of the tissues. I have been practicing for some 30 years. I never had a case to run on like this did. I am not satisfied in my own mind what could cause this extensive and prolonged suppuration. I have tried to find out. * * * *I haven't sworn that this man's trouble is the result of an injury.* I cannot find any other cause. This experience

that this man has had is an unusual one from the cause described; we would not ordinarily expect that extent of trouble from such an injury as he described,—receiving an injury one day, working two or three days afterwards, and then be laid off, and have this suppuration go on, and have a hernia form there. I think the operation in April was for hernia. It came from the breaking down of the tissues from this suppuration. Ordinarily, if a man develops swelling and pus, such as developed in this case, I would expect to find some external signs of an injury. Yes, sir, I was puzzled in the length of time the thing hung on, and I tried to find out what was the cause of this suppuration, and why it should have suppurated in the beginning; but I couldn't, and the only thing I get out of it was it was an injury, and the patient's word was the only evidence of an injury which I had."

Dr. Slattery testified for the defendant. He testified as follows:

"This long period of suppuration and this experience which Miller had, in my opinion, indicates that the glands were infected from some old gonorrhoeal or tubercular condition. The fact that it continued so long and so persistently is a factor in my conclusions."

As against this, it is to be said that a pathologic examination failed to disclose evidence of gonorrhoea. We do not assume to pass upon the weight or credibility of this testimony. It was evidence, and was properly before the industrial commissioner. It may be conceded that it is not contradictory to the testimony of Dr. Bigelow. But that is because Dr. Bigelow did not commit himself to any explanation of the cause of the trouble which he found. So far as the opinion of Dr. Bigelow was favorable to the claimant, it was predicated upon the acceptance by the physician of the patient's own story. The burden was upon the claimant, under the statute, to show that his disability did result from an injury received in the course of his employment. It will not do to say that the evidence of the claimant is binding upon the commissioner, in the absence of direct contradiction. It will not do to say that the commissioner may not consider the weight and credibility of his evidence, in the light of all the circumstances. The remedy here provided by the statute

is intended to be a summary one.   The method of hearing is intended to be more informal than regular court procedure.   It aims at quick results, and this largely in the interest of the employee.   It therefore makes the finding of facts by the commissioner conclusive, where there is a conflict of evidence. Though an appeal to the courts is permitted, the scope of such appeal is very restricted.   To enlarge such scope would be to disregard the very purpose of the statute.   To broaden such scope is to subject the employee to the very burden of litigation from which the statute purports to save him.   We have held heretofore that, on appeal, the district court cannot try the question of fact, except so far as it goes to the jurisdiction of the commissioner.

Upon the record before us, we are satisfied that the finding of the commissioner on the facts was conclusive upon the court. The judgment of the district court is, therefore,—*Reversed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.