Jesse Smith, Appellee, v. Soldiers' and Sailors' Memorial Hospital of Henry County et al., Appellants.

No. 40334.

June 23, 1930.

*Mabry & Mabry* and *H. B. White,* for appellants.

*McCoid, McCoid & McCoid,* for appellee.

WAGNER, J.—It is conceded of record that the claimant (appellee) was in the employ of the Soldiers' and Sailors' Memorial Hospital of Henry County as a janitor on January 10, 1929, and  had been so employed for about seven years prior thereto; that the United States Fidelity & Guaranty Company is the insurer of the liability of the hospital; and that the relationship existing between said employer and employee is one which comes within the provisions of the Workmen's Compensation Law. The issue joined by the pleadings is as to whether or not the appellee, on the 10th day of January, 1929, received an injury arising out of and in the course of the employment which resulted in a double hernia. Evidence was taken before a board of arbitration, as provided by the statutory law, and said board, by a majority of its membership, rendered its decision against the claimant. The claimant, being aggrieved by the decision of the board of arbitration, filed with the industrial commissioner his petition for a review thereof, and on said review, that officer filed a lengthy opinion, affirming the action of the board of arbitration, stating therein that the only question in controversy is as to whether or not the double hernia from which claimant was found to be suffering on January 11, 1929, arose out of his employment by the defendant, and concluding with the following statement:

"It therefore becomes necessary to hold that, because of conflicting and contradictory evidence, Jesse Smith has failed to discharge the burden of proving by credible testimony that this case comes within the rule of compensation coverage. The arbitration decision is affirmed."

The claimant then perfected his appeal to the district court,

which tribunal reversed the order and decision of the industrial commissioner, and fixed the compensation of the plaintiff. From this action by the district court the defendants have appealed.

The question before the industrial commissioner for determination was as to whether or not the double hernia with which the claimant was found to be suffering on the morning of January 11, 1929, was the result of "personal injury  arising out of and in the course of the employment," which injury it is contended by the claimant occurred during the afternoon of the previous day. The burden is upon the plaintiff to establish by a preponderance of the evidence that the injury which he claims caused the disability arose out of and in the course of his employment. See *Bushing v. Iowa R. & L. Co.*, 208 Iowa 1010; *Antonew v. N. W. States Portland Cem. Co.*, 204 Iowa 1001; *Flint v. City of Eldon*, 191 Iowa 845; *Sparks v. Consolidated Indiana Coal Co.*, 195 Iowa 334; *Kraft v. West Hotel Co.*, 193 Iowa 1288; *Miller v. Gardner & Lindberg*, 190 Iowa 700.

It is provided by statute, Section 1452 of the Code, 1927, that, upon appeal to the district court, "in the absence of fraud, the findings of fact made by the industrial commissioner within his powers shall be conclusive." It is provided by Section 1453 of the Code:

"Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other:

"1. If the commissioner acted without or in excess of his powers.

"2. If the order or decree was procured by fraud.

"3. If the facts found by the commissioner do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

We have repeatedly held that, where the evidence is in conflict as to a material matter, the finding of the industrial commissioner upon disputed facts is final and binding upon the courts. See *Kyle v. Greene High School*, 208 Iowa 1037; *Daugherty v. Scandia Coal Co.*, 206 Iowa 120; *Antonew v. N. W. States*

694

*Portland Cem. Co.,* 204 Iowa 1001; *Guthrie v. Iowa Gas & Elec. Co.,* 200 Iowa 150; *Miller v. Gardner & Lindberg,* 190 Iowa 700; *Serrano v. Cudahy Pack. Co.,* 194 Iowa 689; *Flint v. City of Eldon,* 191 Iowa 845; *Kraft v. West Hotel Co.,* 193 Iowa 1288; *Kent v. Kent,* 202 Iowa 1044. In the latter case we said:

''The finding of the commissioner upon disputed facts is on the same footing as the verdict of a jury.''

On the other hand, when the facts are not in dispute, or if there is not sufficient competent evidence to support the findings of the commissioner, then said findings are not binding upon the courts, and the order based thereon may be reviewed and set aside. See *Kyle v. Greene High School,* 208 Iowa 1037; *Johnston v. Chicago & N. W. R. Co.,* 208 Iowa 202; *Tunnicliff v. Bettendorf,* 204 Iowa 168; *Flint v. City of Eldon,* 191 Iowa 845; *Norton v. Day Coal Co.,* 192 Iowa 160; *Rish v. Iowa Portland Cem. Co.,* 186 Iowa 443; *Kent v. Kent,* 202 Iowa 1044; *Johnson v. City of Albia,* 203 Iowa 1171.

It thus becomes apparent that the hearing in this court and in the district court is not a trial *de novo.* Upon appeal to the district court, the matter is heard upon the transcript, as certified by the industrial commissioner, and no additional evidence is allowable. See Section 1452 of the Code, 1927. No fraud is established, and it is not claimed that the commissioner acted beyond his powers.

If the case were triable as an action at law, to a court and a jury, would there be a question of fact to be submitted to the jury for its determination? If the answer to this question be in the affirmative, then the determination thereof by the industrial commissioner, the trier of the facts, is conclusive upon the courts. If the answer to said question be in the negative, then it would be proper for the court to direct a verdict, and in that event, it becomes a question of law, for the determination of the court.

Having stated the rules of law which are applicable in the determination of the proposition before us, we now turn to the evidence. The claimant is 66 years of age. His health was generally good, prior to January 10, 1929. There is evidence to the effect that, prior to that time, he was not afflicted with a hernia. On the morning of January 11th, it was ascertained that he had a double hernia, an operation for which was had on February

4th following. It is the claimant's contention that, on the afternoon of January 10th, he received an injury, resulting in the hernia, while shoveling snow from the walks on the hospital premises. This labor was a part of his duties, as janitor of the hospital. At the hearing before the arbitration committee, the claimant, on direct examination, testified:

"After dinner on January 10th, I was cleaning off snow from the walk from the hospital out to the road. There was quite a bit of snow, and a pretty hard crust on it. The walk was icy, and in places it was rough. I started shoveling snow about half past one, and shoveled until half past four; and I took sick while I was at work there that day, along about four, or half past four. I was sick at my stomach,—something I never was before,—and I quit work, and went down to the hospital. Shoveling snow was pretty heavy work, and it was pretty slick, and I slipped several times. When I would shovel, and hit those chunks, it would jar me up some. The worst one was when I was scooping across the crossing at the alley. I was pushing it [the shovel] along in front of me, and it hit me in the side; and that is the only time I remember of it hurting me so bad, and that is when I took sick. After that, I went down and cleaned up and fixed my fire, and went to bed, and suffered pain all night down in my groin. No one examined me that evening, but the next morning, Dr. Gardner examined me. * * * Dr. Gardner told me I had a double hernia, and ought to be operated on."

On cross-examination, he gave the following testimony:

"I was just scooping along the snow, and whenever I would hit them bumps, it would jar me up some; but when I was going across the crossing, then was when I got the worst bump of all. The handle hit me on the side, when it slipped there; my stomach hurt me awful bad there; and it was a sharp pain, going through my stomach."

Additional evidence was taken, at the time of the hearing before the industrial commissioner. At that time, the claimant testified:

"I worked until about 4:30 o'clock on the afternoon of January 10th, scooping snow. I took sick about 4:30, and had to

quit. It was pretty strenuous work on the snow, and slippery; and when I went across the crossing, I took sick, and felt pain across my abdomen, the shovel handle striking me on my right side, close to my groin. There was ice underneath the snow and rough places that made me slip when I hit the bumps on the walk with the shovel. I slipped quite a few times while shoveling snow. * * * The shovel handle didn't hit me more than a half dozen times, but I didn't keep account, because I didn't think it amounted to anything. * * * The impact of the shovel handle on my abdomen at the crossing gave me a good deal of pain. It was heavy scooping, and cars had run across there. I shoveled with the shovel ahead of me, after breaking the crust, and then threw out the snow. I could not scoop without breaking the crust. A chunk of mud or ice caused the shovel to come back and hit me in the abdomen. After the crossing incident, I tried to scoop, but could not do so, as, every time I tried to scoop, it made that pain hurt worse. The pain was clear across the lower part of my abdomen. When I reached the hospital, I threw just enough coal in the small furnace to last until the man came over to work, and then went to bed. The pain kept getting a little worse when I went to bed, and after I got into bed. * * * So far as I was aware, the hernia first protruded and manifested itself the morning of January 11th.''

At the time of the hearing before the arbitration committee, Dr. E. J. Lessenger had heard the testimony of the claimant, and was told to base his opinion upon the testimony of the claimant, and was asked as to whether or not what took place there, as testified to by him (the claimant), on the afternoon of January 10th, did or did not cause the double direct hernia from which he found him suffering at the time of the operation, and he answered, ''Any one of those could produce it.'' At the time of the hearing before the arbitration committee, Dr. W. S. Lessenger, who performed the operation on February 4th, testified:

''After summing up his whole story [the statement as revealed by the patient to him as the physician], I concluded that it [the hernia] was caused by the slipping, or the shoveling of the snow. The slipping which Mr. Smith did could cause the hernia, apart from any impact or force against his body, and I think the impact of a shovel on the abdomen while in the process

of shoveling snow could cause a hernia, apart from any slipping, and I think the strain and muscular effort connected with work of the type Mr. Smith was doing, could cause a hernia.''

He further testified before the commissioner that the hernia was of recent origin. Basing his opinion upon the claimant's testimony which he had heard, and upon his personal examination of him, and upon the clinical history of the case, as received from the claimant, and upon the operation which he had performed, he testified:

''I am sure it [the hernia] was caused by strain the afternoon before; and by strain I mean an internal force caused by the heavy scooping and slipping. There was nothing else in the . history of the case that I thought would have anything to do with it, except that work that afternoon. From the examination I made of Mr. Smith, and from the operation which I performed, I think the strain and slipping of the work the afternoon before was the cause of the hernia. * * * It takes considerable force to bring on a double direct inguinal hernia. In older men, pain in hernia cases is more distributed all over the lower abdomen, and not definitely located. Sometimes there is very little, if any, pain at the site of the rupture. Pain is often subsequent to injury in older men.''

In a general way, the foregoing constitutes the testimony in behalf of appellee's claim. What does the record reveal as to testimony, creating a conflict? On February 10th, the claimant signed a statement for the adjuster of the insurance company, giving the details relative to the injury. There is no proof of any fraud relative to the procuring of said statement. The claimant admits that he signed it, and that it was read to him before the signing. A portion of said statement is as follows:

''On January 10, 1929, about 4 P. M., I finished shoveling the snow off the long walk from the hospital to the front gate. As I returned to the hospital, I felt sick at my stomach, *but did not feel any pain.* The following morning, I still felt sick at my stomach, and also felt pain in my lower abdomen. I noticed two lumps at the lower part of my abdomen. * * * While shoveling the snow, *I did not strain myself* by shoveling, but I do remember slipping several times. * * * I did not slip and fall to the

ground, but merely slipped around while shoveling. Other than this slipping around, *there was nothing that could be classed as an accident. I did not have any pain until the morning of January 11, 1929.*"

This written statement was shown to the claimant and inquired about on cross-examination, and was introduced in evidence. At the time when said written statement was obtained, two witnesses, Kious and Campbell, were present. Kious testified:

"He [the claimant] said nothing about striking himself in the side with the handle of a shovel. He also told me that he didn't have any pain until the following morning; when he awakened, and that was when he straightened out or stretched and rolled over, and felt this tearing sensation. He made the statement about this incident, occurring in bed, just before I left there, and after Mr. Smith had signed the written statement, and in the presence of Mr. Campbell."

Campbell testified as to this same matter:

"I remember Mr. Smith, saying that he noticed no indication of hernia until he woke up on the morning of January 11th, at which time he straightened out and turned over, at which time he felt a tearing sensation on both sides of his lower abdomen."

One of the claimant's medical experts testifies: "It is surprising how little a strain will cause a hernia at times."

We will not further prolong the opinion by dwelling upon the testimony. The statement of the claimant to Kious and Campbell as to the aforesaid matters is competent testimony. The written statement signed by the claimant is competent, both for impeachment purposes and as substantive testimony. There is conflict in the testimony as to material matters relevant to the question coming before the commissioner for determination. In the claimant's testimony he refers to the shovel handle's striking him in the side and hurting him, causing severe pain, and says that, after that incident which occurred at the crossing, he tried to scoop, but could not do so on account of the pain; while

in his written statement he says nothing about the shovel's striking him, but does therein declare that, other than the slipping around, there was nothing that could be classed as an accident. It is apparent from his testimony that it was the injury he claims to have suffered from the shovel handle's striking him in the side which caused him to cease work. Herein lies a conflict which is quite material in the determination of the question which came before the commissioner. In his testimony, he states that he had severe pain immediately after the handle of the shovel struck him in the side, which kept getting worse until and after going to bed; while, in his written statement, he states that, as he returned to the hospital, he did not feel any pain, that he did not have any pain until the next morning. The medical testimony is to the effect that the hernia could have been caused by the shovel handle's striking him in the side; while, according to his written statement, there was no such occurrence. A portion of the medical testimony is that the hernia was the result of strain caused by the scooping; while, in his written statement, he states that he did not strain himself by shoveling. His contention in his testimony is that he received the injury on the afternoon of January 10th; while the testimony of Kious and Campbell is that, upon his awakening the next morning, he straightened out, stretched, and rolled over, and felt a tearing sensation. Without further elaboration, it is clearly apparent that the record presents a conflict in the testimony as to material matters—disputed questions of fact. In this state of the record, under the rules of law hereinbefore announced, the findings of the commissioner upon the disputed facts are final and binding upon the courts.

The question of the credibility of witnesses who are contradicted by the testimony of other witnesses, or by facts and circumstances, is for the industrial commissioner. See *Miller v. Gardner & Lindberg,* 190 Iowa 700; *Serrano v. Cudahy Pack. Co.,* 194 Iowa 689; *Antonew v. N. W. States Portland Cem. Co.,* 204 Iowa 1001.

It is shown by the evidence that the claimant and his wife lived upon the premises, and that he was subject to call at all hours of the day and night. The plaintiff contends in this court

 that the claimant's services were continuous, although he may have been in bed asleep, and that, even if the hernia occurred on the morning of January 11th, without prior injury on the previous day, then said injury arose out of and in the course of his employment. This contention needs but little consideration. The question is not raised by the pleadings. Moreover, in that event, it could not be successfully asserted that the injury arose out of the employment, as, under the record, there would be no causal connection between the employment and the injury. The words "out of" involve the idea that the injury is in some sense due to the employment. See *Griffith v. Cole Bros.*, 183 Iowa 415; *Kraft v. West Hotel Co.*, 193 Iowa 1288; *McNicol's Case*, 215 Mass. 497 (102 N. E. 697); *Landeen v. Toole County Refining Co.*, 85 Mont. 41 (277 Pac. 615); 28 Ruling Case Law 797, 798.

For the foregoing reasons, the judgment of the trial court is hereby reversed.--*Reversed.*

Morling, C. J., and Stevens, Faville, and Albert, JJ., concur.