FLORENCE DUNCAN, Appellee, v. MRS. T. E. RHOMBERG et al., Appellants.

No. 40651.

May 5, 1931.

Kane & Cooney and Hugh Stuart, for appellants.

Kenline, Roedell, Hoffmann & Tierney, for appellee.

WAGNER, J.—The defendant, Louis Rhomberg, nineteen years of age, is the son of the other defendant, Mrs. T. E. Rhomberg. The mother is the owner of a Cadillac automobile. It is alleged in the petition, that the automobile at the time in question was being driven by the son with the consent of the mother. The grounds of negligence charged in the petition are: (1) in failing to drive said automobile at a careful and prudent speed not greater than was reasonable and proper, having due regard to the traffic, surface, and width of the highway, and of any other conditions then existing; (2) in failing to reduce the speed of said automobile to a reasonable and proper rate when approaching and traversing a curve; (3) in failing when meeting the auto in which the plaintiff was riding, to give one-half of the traveled way of the public highway by turning to the right; (4) in driving said automobile at an excessive rate of speed; (5) in not bringing said automobile to a stop before colliding with the automobile in which plaintiff was riding.

The plaintiff was a guest, riding at the time in question in a Studebaker automobile driven by one, Morton. The collision

occurred on U. S. Highway No. 20, a paved primary road leading from Dubuque through the town of Farley to Dyersville. The concrete pavement is 18 feet wide, with a black line in the center thereof; on each side of the pavement there is an earth shoulder, 4 or 5 feet in width. The defendant, Louis Rhomberg, was driving his mother's Cadillac automobile, and he and a young lady companion were proceeding westerly upon said highway, and the automobile in which the plaintiff was riding was proceeding in the opposite direction. At the west side of the town of Farley there is a sharp curve to the right, and from said curve the highway is straight for a distance of 1629 feet, when a long swinging curve 1093 feet in length is reached; about midway between the two ends of this long curve there is a dirt road leading north therefrom. The collision occurred on the pavement shortly west of this dirt road, between 10 and 11 o'clock on the evening of September 5th, 1929. The County fair was in progress at Dyersville, and about 10:15 P.M. a Studebaker car owned and driven by Morton, and a Chrysler Sedan owned and driven by Mr. Arquitt, left the fair grounds at the same time. Mr. Morton and Mr. Duncan occupied the front seat and their wives the rear seat of the Studebaker. They proceeded easterly upon the highway in question, the Morton car being followed by the Arquitt car. Proceeding in the same direction ahead of Morton was a Ford, driven by Hook. As these three cars proceeded easterly, in coming into the long swinging curve the Morton car was about fifty feet behind the Hook car, and the Arquitt car about the same distance behind the Morton car. The lights on all the cars were turned on. There is no testimony that the cars proceeding easterly were traveling at an excessive rate of speed. The uncontradicted testimony is, that the Morton car was to the right of the center of the pavement and near the shoulder; the same is also true as to the Arquitt car. The testimony in behalf of the defendants is to the effect that Hook was driving the Ford car "astraddle" of the black center line of the pavement, while the testimony in behalf of the plaintiff is to the effect that Hook was driving to the right of the center of the highway. Therefore, this question was for the jury. There is much testimony that at and immediately prior to the collision, Rhomberg was driving from 50 to 60 miles per hour, and that he did not slow down as he ap-

proached or entered the easterly end of the long swinging curve. The testimony in this respect is denied by Rhomberg and his. lady friend. Because of the conflict in the testimony, this also became a question for the jury. Some part of the left side of the Rhomberg car struck the left side of the Hook car in passing, only slightly damaging the Ford car. Morton had turned on the dimmers on the Studebaker car. After the impact between the Ford and the Cadillac, the Cadillac proceeded westerly and collided with the Studebaker driven by Morton, and in which the plaintiff was riding. The left front wheel of the Cadillac was completely demolished, as was also that of the Studebaker. The Studebaker was thrown clear of the pavement, with the rear wheels resting in the ditch four or five feet deep, and the front wheels extending upward upon the shoulder of the highway. The testimony in behalf of the plaintiff is to the effect, that the Cadillac still continued in a westerly direction, colliding with the right hand side of the Arquitt car standing near the south edge of the pavement, breaking the right bumper, spring and fender of the Arquitt car. The Cadillac was finally stopped on the shoulder of the highway just at the edge of the south ditch and west from the Arquitt car. There is testimony, that, from the point of the collision of the Cadillac and Studebaker there was a hole in the pavement a quarter of an inch or more in depth and a well defined line of abrasion upon the pavement for a distance of some 40 feet to where the Cadillac was finally stopped. The plaintiff was severely injured in her right leg; her left ankle was badly sprained; her right leg had five cuts upon it, one above the knee, two in the vicinity of the knee and two below the knee; it required eighteen stitches to repair the wounds. The most serious injury is at the knee, and there is medical testimony, although the same is denied by like testimony, that her injury is permanent—that the disability in the movement of the right knee at the time of the trial was about 25% and that there will be from 10 to 15% permanent disability. While there is other testimony in the record, the foregoing is sufficient for the determination of the legal propositions submitted.

Immediately after the injury, the plaintiff was removed from the Morton car, as located in the ditch, and assisted to the Arquitt car, on the pavement, and taken to her home in Farley.

Before she was removed from the car, the witness, Ruh, appeared upon the scene and rendered assistance in this act. He there saw the defendant, Louis Rhomberg. Ruh testified that, as he assisted the injured lady, he heard the defendant, Louis Rhomberg, make a statement, and was asked by the plaintiff's counsel to tell what statement he made: "Q. Just use the exact words Mr. Rhomberg used according to your best recollection, the words he used then and there," and the witness answered: "He (Louis Rhomberg) says 'I know I was driving fast.' " Both defendants objected to the question, for the reasons that the testimony elicited is incompetent, irrelevant and immaterial, not binding upon the defendant Mrs. T. E. Rhomberg, and that it is no part of the *res gestae*, and moved to exclude the answer for the same reasons. The court overruled the objection and motion, holding that the testimony was a part of the *res gestae*. The appellants complain that this ruling is erroneous. The testimony was clearly admissible as against the defendant, Louis Rhomberg. Was it admissible as a part of the *res gestae*? The appellants rely upon our recent pronouncements in Cooley v. Killingsworth, 209 Iowa 646, and Looney v. Parker, 210 Iowa 85. It is true, that we have held that, while such declarations or admissions of the driver of the car, not a part of the *res gestae,* are admissible as against the driver, they are not admissible as against the owner of the car. See Wilkinson v. Queal Lumber Company, 208 Iowa 933; Looney v. Parker, 210 Iowa 85; Wieneke v. Steinke, 211 Iowa 477; Cooley v. Killingsworth, 209 Iowa 646; Ege v. Born, 212 Iowa ——. But we have not held that declarations of this kind are not admissible when they are a part of the *res gestae.* Statements made as part of the *res gestae* are substantive evidence of the matters stated. We have no doubt as to the admissibility of the statement as a part of the *res gestae.* See Alsever v. The Minneapolis & St. Louis Railroad Company, 115 Iowa 338; Keyes v. The City of Cedar Falls, 107 Iowa 509; Bettinger, Adm'r. v. Loring, 168 Iowa 103; Sutcliffe v. The Iowa State Traveling Men's Association, 119 Iowa 220; Smith v. Dawley, 92 Iowa 312; Christopherson, Administratrix v. Chicago, Milwaukee & St. Paul R. R. Co., 135 Iowa 409; Stukas v. Warfield-Pratt-Howell Company, 188 Iowa 878; Lynch v. Egypt Coal Company, 190 Iowa 1272; State v. Minella, 177 Iowa 283. It must be borne in mind, that this

statement was made by the defendant, Louis Rhomberg, before or during the time when the plaintiff was being removed from the precarious position in which the collision with the car which he was driving had placed her. The fact that he may have been driving his mother's car with her consent and occupied the relationship of, or one similar to, that of agent, does not prevent the admission of the testimony as a part of the res gestae. See Alsever v. The Minneapolis & St. Louis Railroad Company, 115 Iowa 338; Bettinger, Admr. v. Loring, 168 Iowa 103. In the Alsever case, we declared:

"Neither can it make any difference that the statement was made by an employee or agent, rather than the principal or injured person. Declarations are received, as already pointed out, not on the credit or relation of the declarant, but because forming a part of the transaction; and it is immaterial by whom, if by some person whose conduct or condition, about which the statement is made, can be proven."

In the cited case, we quoted approvingly from the case of Lund v. Inhabitants of Tyngsborough, 9 Cush. (Mass.) 36, the following:

"* * * when the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence. The credit which the act or fact gives to the accompanying declarations, as a part of the transaction, and the tendency of the contemporary declarations, as a part of the transaction, to explain the particular fact, distinguish this class of declarations from mere hearsay. Such a declaration derives credit and importance as forming a part of the transaction itself, and is included in the surrounding circumstances, which may always be given in evidence to the jury with the principal fact. There must be a main or principal fact or transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character, are contemporary with it, and derive some degree of credit from it."

In Keyes v. The City of Cedar Falls, 107 Iowa 509, we said:

"It is often difficult to determine when a statement or declaration is a part of the *res gestae*. The rule we have heretofore announced is that, if they are near enough in point of time with the principal transaction to clearly appear to be spontaneous and unpremeditated, and free from sinister motives, and afford a reliable explanation of the principal transaction, they are admissible in evidence."

In Smith v. Dawley, 92 Iowa 312, this court made the following pronouncement upon this question:

"The declarations, to be admissible in evidence, need not be precisely concurrent in point of time with the principal transaction. If they are so near to it as to afford reliable information as to the truth of the transaction, it is sufficient."

In Christopherson v. Chicago, Milwaukee & St. Paul R. R. Co., 135 Iowa 409, we declared:

"Within this general rule, the admissibility of the declarations under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically controlling."

The declaration made by the defendant, "I know I was driving fast," is something more than mere narrative, it is in the nature of a spontaneous explanation of the act or transaction. Without going into any further review of the authorities upon this question, we have no hesitancy in saying that the declaration admitted by the court comes well within the established rule of this and many other courts, and that the same was clearly admissible as part of the *res gestae*. Appellants' contention at this point is devoid of merit.

The only request by the defendants, for an instruction relative to the aforesaid testimony, was to the effect that verbal admissions are weak and unsatisfactory proof and should be received with great caution. The instruction requested upon this subject omitted the same element which was omitted in a similar instruction in Davis v. City of Dubuque, 209 Iowa 1324, and the court would have been in error in giving the requested instruction. The court was not in error in refusing to give the improper instruction requested by the defendants.

█ It appears that a deposition of one of the witnesses for the defendants was taken in Chicago on December 16th, 1929, but he was present as a witness at the trial of this case. He testified that his deposition was taken as aforesaid, and was then asked how much he was paid to go to Chicago to testify as a witness in this case. He was also asked whether, on the morning after the collision, the defendant, Louis Rhomberg, and Donald Chamberlain called on him and took a signed statement from him as to the facts in the case. He was further asked whether, on the night of the collision, he did not say to one Woods "that big car (pointing at the Rhomberg car) came around that bend 70 miles per hour and right into us." Objection to each of the questions was sustained by the court. The appellants complain that the mere asking of the questions constitutes misconduct on the part of counsel for the appellee, which was prejudicial to the defendants. We think that the right or privilege of cross examination was unduly curtailed by the court, and it is quite apparent that there was no prejudicial misconduct on the part of appellee's counsel.

█ Under the heading, "Errors Relied Upon For Reversal," the appellants allege that the court erred in admitting testimony of the witnesses, J. L. Hough and Mrs. J. L. Hough, referring only to the lines and pages of the abstract. Because the statement fails to comply with Rule 30 of this court, the aforesaid alleged grounds of error present nothing for review on appeal. See In re Estate of Work, 212 Iowa 31.

The appellants also allege, as a ground of error, that the court erred in failing to instruct the jury as to defendants' theory of the case and in giving emphasis in the instructions to the plaintiff's theory of the case; also in overruling defendants' motion for a new trial upon the grounds stated therein. These alleged grounds of error do not comply with Rule 30 of this court and are insufficient to present anything for our consideration and determination. See Bodholdt v. Townsend, 208 Iowa 1350; Morrow v. Downing, 210 Iowa 1195.

The appellants complain because the court overruled their motion for a continuance of said cause. The motion was resisted by the appellee. The averments of the motion were insufficient to warrant the court in granting a continuance. A motion for continuance is addressed peculiarly to the sound

legal discretion of the court and his ruling thereon will not be interfered with on appeal, unless it clearly appears that there has been an abuse of discretion and injustice thereby done. It is sufficient to say that there was no abuse of discretion and nothing to show that the rights of the appellants have been prejudiced.

It is contended by the appellants that the judgment against the defendant, Louis Rhomberg, is void because, as claimed, the record shows that he is a minor and that there was no defense made in his behalf by a guardian. Our statutory law provides that the defense of a minor must be by his regular guardian, or by one appointed to defend for him where no regular guardian appears, or, where the court directs a defense, by one appointed for that purpose, and that no judgment can be rendered against a minor until after a defense by a guardian. See Section 10997, Code, 1927. We are unable to comprehend upon what the appellants rely in support of this proposition. There is no merit in the contention, for the record shows that the court appointed John Duffy as Guardian ad litem for the defendant, Louis Rhomberg, and that Kane & Cooney, Hugh Stuart and John Duffy entered their appearance for the defendants. The guardian ad litem filed an answer denying the allegations of the petition and the record shows that, in accordance with the requirements of the statutory law, the minor has been ably represented at every step of the proceedings taken.

It appears that upon the *voir dire* examination of the jurors, they were asked by counsel for the appellee whether they knew Donald Chamberlain, and that one of the said prospective jurors answered in the affirmative; that said prospective juror was then asked as to whether his acquaintance with Chamberlain would cause him to give any more attention to his testimony if called as a witness than the testimony of any other witness, and said juror answered in the negative. The appellants objected to the aforesaid interrogatories as being prejudicial. The abstract fails to show that any exception was taken to the ruling of the court, and it is the universal rule that this court will not review, upon appeal, a ruling of the lower court to which no exceptions were taken and preserved. See Campfield v. Rutt, 211 Iowa 1077. We will add that it was quite proper for counsel for the appellee to ascertain by proper questions the

acquaintance and relationship existing between the prospective jurors and any prospective witness to aid the counsel in exercising challenges.

It appears that Belle Morton, who was in the same automobile with the plaintiff, brought suit against the same defendants and that there had been a trial of said cause. In the trial of the instant case, the plaintiff offered in evidence the duly certified transcript of the testimony of the defendant, Mrs. T. E. Rhomberg, given in the trial of the Morton case. It was not claimed by the appellee that it was admissible under the provisions of Section 11353, Code, 1927, which provides that the original shorthand notes of the evidence or any part thereof taken upon the trial of any cause or proceeding, in any court of record of this state, by the shorthand reporter of such court, or any transcript thereof, duly certified by such reporter, when material and competent, shall be admissible in evidence on any retrial of the case, etc.; but the same was offered as an admission of said defendant. Over the objection of the defendants, the same was received in evidence. The import of said testimony from the transcript is, that she is the mother of the defendant, Louis Rhomberg, who is 20 years old, and that on September 5th, 1929, he was living at home with her. We are of the opinion that said testimony was admissible for the purpose for which it was offered. See Barish v. Barish, 190 Iowa 493. Moreover, the appellants could not have been prejudiced by the receipt of said testimony, for the appellant, Louis Rhomberg, testified as a witness that he was 20 years old on February 11, 1930; that he is a student at Notre Dame; that on the night of the accident, he was driving his mother's car—has been driving an automobile for five years; had driven it before; could not estimate the number of times; "We had the car for approximately two years at that time (time of the accident) and I have driven it all summer and Easter vacations, Christmas vacations and I have driven my mother around town." Still further, the proposition is not argued in appellant's argument in chief and all propositions not argued are considered, under Rule 30 of this court, as waived.

In one of the instructions the court told the jury that the driver may be said to have his automobile under control when he has the ability to guide and direct its course of movement, fix its speed and bring it to a stop within a reasonable

time. The appellants complain of this instruction. We have said that a car is "under control" within the meaning of the law if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. See Carruthers v. Campbell, 195 Iowa 390, at 392; Carlson v. Meusberger, 200 Iowa 65, at 76; Altfilisch v. Wessel, 208 Iowa 361. In Gilbert v. Vanderwaal, 181 Iowa 685, we held that having a car under control refers to the ability to stop the car within a reasonable distance, in view of the circumstances. In Altfilisch v. Wessel, 208 Iowa 361, the trial court did not define the term "under control." We there said:

"No instruction was requested by appellant on this point, and we think it was not error for the court to fail to define the term. It is somewhat difficult of accurate and precise definition under all circumstances. The term as used in the instruction complained of must be generally understood in the practical sense, and, under the circumstances disclosed, could not well have been misunderstood by the jury."

There is very little difference, if any, in meaning between the instruction given by the court on this subject and the definition given by us in the foregoing cases. We find no prejudicial error at this point.

■ The court in the instructions properly told the jury that, in order for the plaintiff to recover, she must establish, by a preponderance of the evidence, that the defendant, Louis Rhomberg, was guilty of negligence in one or more of the particulars charged in the petition and submitted to them for their consideration, and that such negligence, if any, was a proximate cause of plaintiff's injury, and that if they should fail to find, from a preponderance of the evidence, that the accident in question was the direct and proximate result of such negligence, it would be their duty to return a verdict in favor of the defendants. The court properly defined the meaning of the term "proximate cause." The court also properly told the jury that negligence may be the proximate cause of an injury of which it is not the sole cause, and that if they should find, from a preponderance of the evidence, that the defendant, Louis Rhomberg, was negligent in any one or more of the particulars charged

in the petition and submitted for their consideration, and that said negligence, if any, concurred with the action of Firman Hook in the operation of the Ford car which Hook was driving at the time in question, in bringing about and causing the injury to plaintiff, and that said injury would not have resulted to plaintiff but for such negligence upon the part of the defendant, Louis Rhomberg, then said defendant's negligence would be a proximate cause within the meaning of the law. The appellants make no complaint relative to the foregoing instructions.

In another instruction, the court told the jury that if they should find that plaintiff has failed to establish any negligence on the part of the defendant, Louis Rhomberg, as charged in the petition and submitted for their consideration; and should find that the collision, and damage resulting therefrom, between the Rhomberg car and the Hook car, were caused by the negligence of Hook in failing to give one half of the traveled way to the Rhomberg car, and that through this collision of the Rhomberg car and the Hook car, and as a direct result thereof, Louis Rhomberg lost control of his car "and the collision with the car in which plaintiff was riding was the direct result thereof, then there can be no verdict against the defendants in this case." The appellants complain that said instruction allows the jury to fix liability for plaintiff's injury upon negligence of the defendant, Louis Rhomberg, irrespective of the question as to whether such negligence was the proximate cause of the collision and damage to plaintiff. It is quite apparent that there is no merit in such complaint. Indeed, the instruction is quite favorable to the defendants and is in accord with their theory of the case. The court quite carefully and fully instructed the jury that there could be no recovery by the plaintiff for her injury, unless negligence of the defendant, Louis Rhomberg, as charged in the petition and submitted for their consideration was a proximate cause of said injury. It is a familiar rule that instructions must be considered as a whole, and when the instructions upon this question are so read and considered, it is quite apparent that they are comprehensive and easily understood and fully protect the rights of the defendants. The court, in the instructions, told the jury, that he had not attempted or intended to embody in any one of the instructions all of the law applicable to the case, and that they were to consider and

construe all of the instructions together, and apply them as a whole to the evidence in the case. The complaint of the defendants at this point is devoid of merit.

 In the instruction relative to the amount of appellee's recovery, the court told the jury that the plaintiff is entitled to "the fair and reasonable compensation for personal injury, pain and suffering, past and future, and permanent injury and disfigurement, if any, sustained by her as the direct result of the accident and injuries, if any, as shown by the evidence in this case," etc. The appellants complain that said instruction does not limit the jury to an allowance of the fair and reasonable compensation for future pain and suffering, if any, that she is reasonably certain to endure. There is no merit in this complaint. It will be observed that the court told the jury that the plaintiff is entitled to "the fair and reasonable compensation for personal injury, pain and suffering, past and future, * * *, if any, as shown by the evidence in this case." No amplification of the instruction was requested by the appellants. Jurors of ordinary intelligence could not misunderstand the meaning of the language used in the instruction stating that they should allow for pain and suffering, past and future, *"as shown by the evidence in this case."*

 The court in one of the instructions quoted a portion of the statutory law found in Section 2, Chapter 128, Acts of the 43 G. A., to wit:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing."

The appellants now complain because of the omission by the court of the remainder of said section. The proposition now urged by the appellants was not raised in the trial court by any exception to the instruction. Therefore, the same needs no consideration.

 The appellants complain because of the refusal by the court to give a requested instruction upon the question of proximate cause. As hereinbefore stated, the court instructed quite fully upon that question. It is the theory of the appellants

that the defendant, Louis Rhomberg, was free from negligence, and that the cause of the injury to plaintiff was negligence on the part of Hook, the driver of the Ford car. The question as to negligence on the part of plaintiff and Hook was for the jury. If Rhomberg was not guilty of negligence, then there could be no recovery against the Rhombergs in this action and the jury were so instructed. If Rhomberg was guilty of negligence, which was a proximate cause of plaintiff's injury, and the plaintiff was free from contributory negligence, then Rhomberg is liable, although his negligence may have concurred with negligence on the part of Hook. See Wolfson v. Jewett Lumber Company, 210 Iowa 244; Rice v. Whitley, 115 Iowa 748; Gould v. Schermer, 101 Iowa 582; Judd v. Rudolph, 207 Iowa 113. The thought of the requested instruction, or that part thereof to which the appellants were entitled, was incorporated into the instructions given by the court and hereinbefore referred to. The theory of the appellants in this respect was properly and fully presented to the jury. This contention of the appellants is devoid of merit.

In another request, the defendants asked the court, in substance, to instruct the jury, that if they should find that the collision between the Rhomberg car and the Hook car caused Louis Rhomberg to lose control of his car, all that Rhomberg was required to do, under the law, was to do whatever an ordinarily prudent and cautious man would do under the same or similar circumstances to avoid collision with the car in which the plaintiff was riding. The thought of this requested instruction was incorporated in one given by the court. The court, in the instructions, properly defined negligence and ordinary care. There is no error at this point, as to which the appellants can complain.

The appellants, under the heading: "Errors Relied Upon For Reversal," allege that the court erred in refusing to give to the jury Instructions two, five, seven, eight, nine, ten and eleven asked by the defendants, for the reason that said requested instructions embodied principles of law inhering in and applicable to the facts in the case. This statement of error is omnibus in character and insufficient under Rule 30 of this court to present anything for review. See Bodholdt v. Townsend, 208 Iowa 1350; Peoples Trust & Savings Bank v. Smith,

212 Iowa 124; Brenton v. Lewiston, 213 Iowa ——; Dailey v. Standard Oil Company, 213 Iowa ——. Moreover, the exceptions for failure to give the requested instructions are couched in the same general and non-specific language. Exceptions in this form for failure to give requested instructions are not sufficient to entitle the appellants to a review in this court. See Section 11495, Code, 1927; Bodholdt v. Townsend, 208 Iowa 1350; Anthony v. O'Brien, 188 Iowa 802. Section 11495, Code, 1927, provides:

"Any party may take and file exceptions * * * to the refusal to give any instructions as requested, within five days after the verdict in the cause is filed or within such further time as the court may allow, and may include the same or any part thereof in a motion for a new trial, but all such exceptions shall *specify* the part * * * of the instructions requested and refused *and the grounds of such exceptions.*" (Writer's italics.)

In Anthony v. O'Brien, 188 Iowa 802, we said:

"* * * the very evident purpose thereof (the statute, now Section 11495, Code, 1927) when considered in connection with the context, is that a party may not rely on a mere refusal to give an instruction, but must specify the grounds on which he predicates error in such refusal. There is quite as much reason for requiring this as in exacting specific objection to the instructions, and both are calculated to facilitate corrections of errors in the *nisi prius* court, and thereby avoid the expense and delay of appellate reviews, as far as possible. Whether an instruction requested, or some feature of it, should be submitted to the jury, often involves a careful comparison between the instructions requested and those given. Moreover, many instructions are requested so near the time of submission to the jury as to render unlikely a careful examination and critical comparison of those given and those requested, and it is only fair that the trial court have an opportunity to have all the alleged defects in instructions given and in the refusal to give, submitted and passed upon, as a condition precedent to review in this court."

To merely say that a requested instruction embodied a principle of law inhering in and applicable to the facts in the case, is not specifying the grounds of the exception as required by

the statutory law. If the substance of a requested instruction is given by the trial court, then, of course, a complaint for refusal to give the same is groundless. The appellants do not aver in the exceptions that the instructions requested, or the thought thereof, are not incorporated in the instructions given by the court. The burden is upon the appellant to specifically point out to the trial court the error claimed to have been committed by the court in refusing to give the requested instruction, or instructions. It is sufficient to say that it was not done in the instant case by the general and nonspecific exceptions in the form as stated.

The jury returned a verdict in favor of the plaintiff in the sum of $3250.00. The trial court ordered that there should be a new trial, unless the plaintiff file a remittitur of $1000.00. The remittitur was filed; therefore, the judgment of the trial court is in the sum of $2250.00. It is the contention of the appellants, that the amount as thus reduced by the trial court is still excessive. Any verdict in a personal injury case is, at best, but an approximation. There is a difference between the medical testimony offered by the plaintiff and that offered by the defendants as to the seriousness of plaintiff's injuries. The undisputed testimony shows the expenditure of $118.50 for medical and surgical attention and $30.00 for nursing. Plaintiff was unable to do any housework for a period of five weeks. Thereafter, up to the time of the trial, six and one half months later, she required help in the performance of her household duties. She is only 25 years of age and prior to her injury was in good health. There can be no doubt from the record that she was seriously and painfully injured. There are two moon shaped cuts at and just below the right knee cap; these cuts are several inches in length; there are also two cuts between the ankle and the knee several inches in length. Her left ankle was badly sprained. She is unable to do any work requiring the bending of the knee without great pain; there are four prominent permanent scars on her leg below the knee. One of the doctors testified that, in his opinion, kneeling would be painful. Another physician testified, that the pain is occasioned by an impingement of the nerve filament; ''the injury affects her ability to stoop or bend the right knee. The per cent of disability in that right knee at this time is 25%. The permanent

disability is probably 10 or 15 per cent after it has healed as much as it is going to.'' On cross examination he testified:

''I mean that the motion in her knee is restricted 25% at this time; she walks normally unless she tries to take a specially long stride or turns suddenly. If there is any motion or any force put on that knee while the knee is bent she evidences pain; there will be a physical disability as well as the appearance of the scar. It is the disability which always follows an injury of that kind, because, regardless of how much the appearance of the scar may fade, the tissues will never be normal tissue. It restricts the free motion of that knee; these muscles and the stride and the action of the knee will not, in my opinion, clear up. I would call it a permanent disability to the extent of 10 or 15%.''

Without dwelling further upon the testimony, it is apparent that the plaintiff's injuries were painful, and that she still suffers pain and lack of full movement in the knee, and she suffers the humiliation of four scars which are permanent. The jury could properly find a permanent disability of 10 to 15% in the use of the knee, and that she will continue to suffer pain in the future. The trial court, who saw the plaintiff, in his discretion has reduced the verdict in the amount of $1000.00. We are content with the amount of the judgment which the trial court permitted to stand; the same has support in the testimony.

We have carefully considered all matters urged upon us by the appellants for a reversal and find no prejudicial error. The judgment of the trial court is hereby affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, MORLING, and KINDIG, JJ., concur.