IRMA M. SINCLAIR, Appellee, v. ED McDONALD et al., Appellants.

No. 45485.

FEBRUARY 18, 1941.

Havner, Flick & Powers, Margaret I. Cunningham, and F. L. Galpin, for appellee.

Miller, Huebner & Miller, for appellants.

SAGER, J.—Appellants thus state the issues:

"There are but two main or ultimate issues involved in this appeal, one is as to whether there is sufficient evidence in the record to sustain the burden of proving by a preponderance of the competent evidence that the decedent sustained a personal

injury arising out of and in the course of his employment on August 22, 1938, and the other is as to whether the claimant has proven by a preponderance of competent evidence that Sinclair's death *resulted* from and was *proximately* and *directly* caused by an injury thus sustained.''

We do not attempt to discuss all the contentions made in the more than 250 pages of briefs and arguments before us. The parties are represented by able lawyers skilled in this sort of litigation. They have invited us into fields which we deem it unnecessary to enter. We have frequently held that where the facts are in dispute, the findings of the commissioner are final. Miller v. Gardner & Lindberg, 190 Iowa 700, 180 N. W. 742; and cases cited later herein. In Smith v. Soldiers' & Sailors' Mem. Hosp., 210 Iowa 691, 694, 231 N. W. 490, 492, Justice Wagner, speaking for the court, said:

''If the case were triable as an action at law, to a court and a jury, would there be a question of fact to be submitted to the jury for its determination? If the answer to this question be in the affirmative, then the determination thereof by the industrial commissioner, the trier of the facts, is conclusive upon the courts. If the answer to said question be in the negative, then it would be proper for the court to direct a verdict, and in that event, it becomes a question of law, for the determination of the court.''

The deceased had been employed by the appellant McDonald ''off and on'' for 16 years. His principal duty was to operate an excavator, a machine used in road building. Incident to and as a part of his work, deceased was required to grease various parts of the machine, including the bearings on the elevator which carried earth up an inclined plane or belt to be deposited in trucks which moved along with the excavator as it proceeded. This greasing required Sinclair to be on the job sufficiently early to have it completed before the day's work began. To reach the grease cups on the outer or upper end of the elevator, deceased was required to climb up the elevator and from near the top reach over the sides and by the use of a ''gun'', force grease into cups provided for that purpose.

On the morning of August 22, 1938, Sinclair was picked up

by Beng, a fellow-employee, and taken to the place of work, this about 5:45 or 6 a. m. When last seen by Beng, Sinclair was walking toward the excavator. Appellant McDonald and two other employees, on their way to breakfast, had passed Beng and Sinclair. The witnesses testified that there was an interval of about ten minutes during which time deceased was alone and no one saw what happened. From this circumstance appellants argue that there was no proof that Sinclair "sustained a personal injury arising out of and in the course of his employment." This contention overlooks the circumstances upon which the commissioner could and did reach a different result. When appellant McDonald and these two employees came to the place where the excavator stood, Sinclair approached with his arms pressed against his chest and said, "I would like to be taken in some place where I could lay down. * * * I slipped on the [elevator] belt and would like to have you take me in [where I could lie down]."

Another witness heard "Charley [Sinclair] say to Mr. McDonald that he slipped on the elevator and hurt himself." Said witness testified further:

"As he turned around Sinclair's hands were up against his body and they were crossed a little to the side of his chest across his body. That was just a little after six o'clock or possibly ten minutes after six o'clock. He wanted to lie down. I asked him if he thought he had cracked any ribs and he said no, it was his chest that he had hurt. After he came over to the truck he walked around to the right side and got in."

From thence he was taken to the bunkhouse. Arriving there he stepped onto the tongue without assistance and up into the bunkhouse where he laid down. In about five minutes he was dead. Appellant McDonald narrates the transaction in the same way, adding the detail that Sinclair's hands were greasy. Later investigation revealed that one of the grease cups on the outer end of the elevator had been greased, the other not. On the belt, about the place where deceased would be in the operation of filling the cup which was found full, was a mark such as might be made by the slip of a foot.

These circumstances justified the commissioner in holding that Sinclair was injured in the course of his employment. He was at the place he was supposed to be, at the time his work required his presence, and had been engaged in the work he was required to do. And Sinclair's complaints as to how he was hurt, the fact that his face was covered with sweat and that he appeared to be suffering great pain leaves little doubt as to what happened. Appellants argue, however, that Sinclair's statements were not substantive evidence of the facts narrated. It is sufficient to say that we have held otherwise. Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Duncan v. Rhomberg, 212 Iowa 389, 236 N. W. 638; Califore v. Chicago, St. P., M. & O. R. Co., 220 Iowa 676, 263 N. W. 29.

This brings us to the second of the issues proposed by appellants. No doctor saw the deceased between the time he was hurt and his death. Those who had worked with Sinclair up to that time saw no signs of ill health in him. They never knew of any disability suffered by him except a few weeks before when something had fallen and injured his leg. This was only a passing hurt. He had at all times performed the arduous duties of his job without difficulty and without complaint. In 1937 Doctor Dean made a general examination of him. No heart trouble of any kind was detected; neither was anything organically wrong discovered.

Notwithstanding the facts narrated, an autopsy disclosed a defective condition of the heart. The record is replete with medical terms which explain the condition of the heart, the blood vessels leading to and from it and appearances which told the medical experts that the organ was not normal. The doctors who took part in the post mortem differed as to whether the extra strain added to the heart by a fall or an attempt by Sinclair to save himself from its consequences hastened his death, or whether he was stricken by a heart attack and then fell. The commissioner in his finding put it this way:

"Both parties presented able, learned and experienced medical witnesses, at least two of whom had for years made a special study of heart troubles and parts incident thereto. Hypothetical questions were propounded to all of the respective

medical witnesses, who answered and gave conflicting respective conclusions.''

The commissioner chose to give the greater credit to those who expressed the opinion that the fall hastened the death of Sinclair. After an exhaustive analysis of the testimony and findings which covered more than 30 pages of printed record, this was the commissioner's conclusion:

''For the reasons thus stated we hold as a finding of facts that the deceased in question sustained a personal injury within the meaning of the law that materially aggravated and accelerated a preexisting physical condition that caused death sooner than it otherwise would have occurred and for that reason the award as made by the arbitrator should be and is hereby affirmed.''

The trial court reviewing the record sustained this finding and we are satisfied with the result. To hold otherwise we would have to decide that because medical experts differed in the conclusions to be drawn from admitted facts the cause of death had been cast so completely in the realm of speculation that appellee could not recover. The statement of such a proposition would seem to be its own answer.

We have examined the large number of cases cited but we do not extend this opinion to analyze them. They speak for themselves. These, among others, support the decision of the trial court:

Whitney v. Sioux City, 172 Iowa 336, 154 N. W. 497; Stukas v. Warfield-Pratt-Howell Co., supra; State v. Lewallen, 198 Iowa 382, 199 N. W. 266; Belcher v. Des Moines Elec. Lt. Co., 208 Iowa 262, 225 N. W. 404; Smith v. Soldiers' & Sailors' Mem. Hosp., supra; Duncan v. Rhomberg, supra; Dille v. Plainview Coal Co., 217 Iowa 827, 250 N. W. 607; Guyon v. Swift & Co., 229 Iowa 625, 295 N. W. 185; Lindeken v. Lowden, 229 Iowa 645, 295 N. W. 112.

A number of these cases are cited by the appellants. They also cite Hunter v. Colfax Coal Co., 175 Iowa 245, 154 N. W. 1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803; Bidwell Coal Co. v. Davidson, 187 Iowa 809, 174 N. W. 592, 8 A. L. R. 1058; Miller v. Gardner & Lindberg, supra; Flint v.

Eldon, 191 Iowa 845, 183 N. W. 344; Webb v. Iowa-Nebraska Coal Co., 198 Iowa 776, 200 N. W. 225; Johnston v. Chicago & N. W. R. Co., 208 Iowa 202, 225 N. W. 357; Kyle v. Greene High School, 208 Iowa 1037, 226 N. W. 71; Hawkins v. Bleakly, 243 U. S. 210, 37 S. Ct. 255, 61 L. Ed. 678; Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. In none of these cases do we find appellants' contentions supported.

As bearing on the weight and effect to be given to the statements of Sinclair as part of the res gestae, see Stukas v. Warfield-Pratt-Howell Co., supra; Duncan v. Rhomberg, supra; Califore v. Chicago, St. P., M. & O. R. Co., supra; Whitney v. City, supra; State v. Lewallen, supra.

Contentions of appellants not herein specifically mentioned have been considered and found to be without merit.

Finding no error in the ruling of the trial court, its decision should be and it is affirmed.—Affirmed.

HALE, C. J., and BLISS, STIGER, WENNERSTRUM, GARFIELD, OLIVER, and MITCHELL, JJ., concur.

MILLER, J., takes no part.