REVERSED.

ED STONE, APPELLEE, V. THOMSON COMPANY, APPELLANT.

FILED DECEMBER 9, 1932. No. 28602.

*Kennedy, Holland & DeLacy* and *Ralph E. Svoboda,* for appellant.

*Baker, Lower & Sheehan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This action was commenced pursuant to the provisions of the workmen's compensation act by Ed Stone, plaintiff, to obtain compensation for personal injuries sustained by him on or about January 6, 1931, while he was employed as a dump foreman by the Thomson Company, defendant herein. The plaintiff received compensation in the sum of $15 a week from January 13 to January 31, 1931, and $25 for medical care, and in this action he seeks additional compensation for total disability arising from his injuries.

The hearing before the compensation commissioner resulted in an award in favor of the plaintiff which, upon appeal to the district court for Douglas county, was affirmed, the court finding that the plaintiff has been totally disabled since August 27, 1931. The defendant was thereupon ordered to pay the plaintiff $15 a week for 300 weeks, less the compensation for two weeks and five days already paid to the plaintiff, and at the expiration of the 300-week period $12 a week for the remainder of his life. In addition, the defendant was ordered to pay certain hospital and medical expenses incurred by the plaintiff and also $100 as attorney's fees. The defendant has appealed.

The plaintiff is a resident of Omaha, but at the time of the accident he was employed by the defendant at or near Beagle, Kansas. The defendant company had its headquarters in Nebraska and within the city of Omaha.

The defendant contends that the provisions of the Nebraska workmen's compensation act do not apply here and that the court is without jurisdiction, the argument being that, if the work to be performed is in another state

than that in which the contract of hiring was made, the right of an employee to compensation is governed by the law of the state in which the work was to be performed if at the time there is no industry within the state where the contract was made to which the employment was incidental. And it is also argued that the residence of the employer within the state of the place of contract or an office therein do not determine the location of the industry. And in support of its contention the defendant cites, among others, two recent decisions of this court.

In *Watts v. Long,* 116 Neb. 656, 59 A. L. R. 728, the employer there resided in and had his principal place of business at Concordia, Kansas, and he maintained no place of business or branch office in Nebraska other than temporary quarters. The employee there resided at Wymore, Nebraska, where he was temporarily employed by the defendant, and he later moved to Kansas where he was again employed by the defendant. We held in the *Watts* case that the defendant's principal place of business was in Kansas, and that the contract was not incident to any industry carried on in Nebraska, but that it had reference only to work in Kansas, and that the employer might perhaps never obtain another contract of work to be performed in Nebraska.

In *McGuire v. Phelan-Shirley Co.,* 111 Neb. 609, a resident of Nebraska entered into a contract in Nebraska with a Nebraska corporation which had its principal place of business in Omaha for the performance of work in Iowa, where the employee was injured, and we there held that the compensation proceedings were maintainable in Nebraska. In *Watts v. Long, supra,* we held that the *McGuire* case was not controlling from the fact that the employer's principal place of business in that case was in this state, while the employer in the *Watts* case had his principal place of business in another state and did not actually carry on an industry in Nebraska.

The decision in *Watts v. Long, supra,* was approved

and followed in *Freeman v. Higgins*, 123 Neb. 73, also cited by the defendant. In the *Freeman* case the employer was a contractor residing at Fairbury, Nebraska, but his sole business at the time of the employment of the plaintiff, who also resided in Nebraska, was construction work in the state of Wyoming. There was no evidence that the employer in that case had his principal place of business in Nebraska, nor that he maintained any business in Nebraska. In fact the plaintiff in that case was listed as an employee in Wyoming at the time of his injury and we held that the contract was not incident to any industry carried on in Nebraska.

In the present case, however, the plaintiff is a resident of Omaha and, as disclosed by the evidence of a member of the defendant firm, the company had for several years preceding the trial, and within six weeks thereof, maintained its headquarters at Omaha. All parties agree that the matter of plaintiff's employment was there discussed, although the actual performance of the work was in Kansas. The defendant claims that the engagement of the plaintiff was made in Kansas, but the testimony adduced in support thereof is rendered somewhat equivocal on cross-examination. The plaintiff's testimony to the effect that his employment took place at Omaha, Nebraska, is persuasive, and we accept it as true, as the district court must have done. The case is tried here *de novo*. And where cases are tried *de novo* and the evidence is conflicting, this court will consider the fact that the trial judge saw and observed the witnesses while testifying and gave greater credence to some than to others. The record discloses that the Thomson Company is engaged in the general contracting business and carries on its business in Kansas, Iowa, Nebraska, Oklahoma and other adjoining states, and that at various times employees were taken from Nebraska to the places where work was to be performed. Clearly, the above cited *Watts* and *Freeman* cases are not controlling here. And in an action to recover for personal injuries under the provisions of the

Nebraska workmen's compensation law, where the plaintiff was a resident of Nebraska, and the employer maintained its principal headquarters in Nebraska but sent its employees to various adjoining states in the performance of certain contracts and employed the plaintiff to work at a point in Kansas where he was injured, the contract of employment having been made in Nebraska, we conclude that the industry in Kansas was merely incident to that carried on in Nebraska and that such action for compensation is maintainable here.

The defendant also contends that the evidence is insufficient to prove that the plaintiff's condition is a result of the injuries sustained by him in the course of his employment. But, in view of the facts which are hereinafter set forth, we cannot assent to this assignment by the defendant. When the accident occurred the plaintiff, with others, was engaged in loading a gas shovel upon a flatcar, when a plank which he was using to tighten cables slipped. The cable was tightly wound at the time, and the tension therein pulled it out of the plaintiff's hands and the plank swung around and struck him, thereby throwing him from the car to the ground and striking his left hip and abdomen. At the time the ground was frozen and covered with cinders. Immediately thereafter the plaintiff was treated by the defendant's physician, who testified that the plaintiff sustained a fracture of certain ribs on his right side and injuries to his kidney and stomach.

The plaintiff testified that he was very stiff and sore for some time after the accident, but that he was informed by his physician that it would be better for him to do light work, and that his injury was a flesh and muscle bruise which would wear off more quickly by exercise. The physician denied having advised the plaintiff to exercise, and denied having stated to him that he might have further difficulty in the future as a result of his injuries, but he testified that he informed the plaintiff that if he could stand it he could go back to work.

Plaintiff had a severe attack of pain in his back and in his left leg in the latter part of April, but he continued working for the defendant until some time in June, 1931, and during the summer he did similar work for other companies. During all of this time, however, his back and leg appear to have bothered him and, on August 27, he was compelled to cease working.

An Omaha physician examined the plaintiff and diagnosed his condition as a type of bone tumor, after X-ray pictures had been taken of his hip. He testified that a history of most cases involving tumor of the bone discloses that such tumors arise from a trauma or injury. An operation was performed on the plaintiff's hip, the operation consisting of making an opening in the hip and scraping out certain tissue which was described as a malignant growth. The physician's prognosis in respect of the plaintiff is that he will die from the condition existing in his hip and the doctor could not say how long he would live. He recommended future treatments of X-ray therapy to keep down the growth of the cells, but he testified that the case might reach a point where such treatments would be of no avail "because in all forms of cancer they eventually die." And in a report dated October 14, the physician concluded with the statement that the plaintiff's condition was due directly to the injury he sustained in January, 1931, and he testified that it was generally agreed by all bone authorities that such a condition was usually the result of trauma. He further testified that about 50 per cent. of the people in plaintiff's condition believe they have a rheumatic condition until the X-ray pictures reveal otherwise.

The physician by whom the X-ray pictures were taken testified that the first pictures were taken before the operation and that at the time he expressed the opinion that the plaintiff had a new growth of some character in the bone which was of a destructive type and which has a "bad prognosis" and, in his opinion, will prove fatal to the plaintiff. He also expressed the opinion that a trauma

caused the plaintiff's condition. To the same effect is the evidence of another physician.

On behalf of the defendant, testimony was offered to the effect that a trauma does not cause a tumor and that the plaintiff's condition is not due to the injury he received. One physician testified, however, that if there were signs of external violence and if the plaintiff had black and blue marks at the time of the injury he would say a trauma was the cause of his condition.

From an examination of all of the evidence, we conclude that there is ample testimony showing that the tumor is a direct result of the injury suffered by the plaintiff. So far as disclosed by the record, the plaintiff was in good health before the accident. And it is further disclosed that there apparently is no cure for the tumor or cancerous condition and that it will eventually prove fatal to the plaintiff.

It is contended that the plaintiff did not file his claim herein within the 6-month period provided by statute. The injury did not culminate in total disability until some months after the plaintiff had signed a release of final settlement with the defendant, and at the time he had no means of knowing that the condition in his hip would develop into a malignant growth as a result of the injury. We do not think the plaintiff is precluded from recovering compensation where such injuries were latent and did not culminate in total disability until after six months from the date of the accident, and proceedings for compensation were instituted within six months after the culmination of the injury into total disability. *McGuire v. Phelan-Shirley Co.*, *supra*; *Flesch v. Phillips Petroleum Co.*, *ante*, p. 1. Complaint is also made that the court erred in excluding certain evidence on the cross-examination, but we do not find merit in this contention of the defendant.

The judgment is affirmed, with an allowance of $100 to plaintiff's attorneys for services in this court.

AFFIRMED.