NANCY CALIFORE, Appellee, v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

No. 43010.

OCTOBER 23, 1935.

Jepson, Struble & Sifford, for appellant.

Yeaman & Yeaman and A. H. Bolton, for appellee.

PARSONS, J.—This is a matter arising under the Workmen's Compensation Act (Code 1931, section 1361 et seq.) on the complaint of Nancy Califore. Her husband, Fred Califore, had

sustained personal injuries arising out of and in the course of his employment at Sioux City, Iowa, with the Chicago, St. Paul, Minneapolis & Omaha Railway Company. The answer of the railway company admitted that the claimant was the widow of Fred Califore, who was employed by the defendant prior to his death, and claimed that the matter was governed by the United States law regulating the obligations of common carriers, and the rights of their employees (45 USCA sections 51-59), and that the defendant was a common carrier, and that it and Fred Califore were engaged in interstate commerce at the time of the alleged accident. The reply of the claimant denied that it came under the act of Congress, asserting that the employee, Califore, was not engaged in interstate commerce at the time of receiving the injuries.

The abstract of the evidence is very short, and it is explained in the argument of the appellant why this is so.

There was set out in the abstract no evidence from which the time of the death of Califore could be determined, or the cause of his death, but in the brief and argument of the railway company, the employer, the following is stated:

"It is said at the outset, that inasmuch as only two alleged errors of the Court are raised by this appeal, only so much of the record testimony has been abstracted as is necessary to present to this Court matters raised by this appeal. Thus we intentionally depleted the abstract filed herein, by not including therein the medical testimony which was lengthy and would serve no purpose of this Court. However, we have set out all of the testimony that was offered showing how the accident happened, and the testimony tending to establish the nature of the deceased's employment.

"As we have stated, we are relying upon two alleged errors of the district court in this appeal."

The assignments of error depended upon for reversal are two. This leaves only the two questions to be determined that are covered by these assignments of error:

1. The court erred in finding that the accident and resulting death arose out of and in the course of employment for the reason that there is not sufficient competent evidence in the record to warrant such finding.

2. The court erred in finding that the deceased, Fred Cali-

fore, was not engaged in interstate commerce and in holding that the industrial commissioner had jurisdiction for the reason that the uncontroverted testimony showed him to have been engaged in interstate commerce.

The arbitration decision was in favor of the plaintiff, and, on the petition for review, the industrial commissioner affirmed the arbitration decision which was appealed to the district court of Woodbury county, Iowa, and that court affirmed the decision of the industrial commissioner.

The evidence shown by the abstract was that Califore was employed by the defendant as a night watchman in the yards at Sioux City; that it was his duty to patrol the yards, chase out intruders, report fires, etc.; that he had nothing whatever to do with the movement of trains. It further shows that on the evening he was hurt he was at the yards in the performance of his usual duties; that the police were notified by radio to go to the yards, and, on arriving there, they found Califore with an injury to his chin; that he was asked how he received it, and he said he found some negroes in and about the cars, and that one of them struck him; and some negroes were picked up by the police that night, and Califore identified one as the man who struck him; and that this was all done inside of about two hours from the time the occurrence took place.

The concession made in the record in argument, and the setting out of the only two assignments of error, leaves these the only questions to be determined: Was there evidence to support the finding of the commissioner? and, second, Was the deceased engaged in interstate commerce, or rather, interstate transportation, so as to bar him from an action under the Iowa compensation law, or whether, if he had any action, it came under the federal act governing interstate transportation?

So, as we review this case, the question is: Was the injury, when received, in the course of employment and arising out of the course of employment? It is only necessary for us to decide this question as to the first assignment. And if there is conflict in the evidence, or if the only evidence on the question supports the commissioner, then under the decisions of this court, oft repeated, the finding of the commissioner is controlling. So, that the only question would be as to whether

or not there was any competent evidence to support the finding of the commissioner.

We see nothing in Almquist v. Shenandoah Nurseries, 218 Iowa, 724, 254 N. W. 35, in Wittmer v. Dexter Mfg. Co., 204 Iowa, 180, 214 N. W. 700, or in Miller v. Gardner & Lindberg, 190 Iowa, 700, 180 N. W. 742, cited by appellant, that is determinative of this question, and we think none of these cases go to the point urged in this case.

It is urged, however, that a case cannot be proven solely by incompetent hearsay testimony. This is true, and needs no citation to support it.

Subdivision 4 of section 1453 of the Code provides that the order may be reversed, modified, or set aside if there is not sufficient competent evidence in the record to warrant the making of an order or decision.

■■ What is "competent evidence" in this case? There is no question under the evidence of the employment of Califore by the company; that he was at the yards of the company in the course of his employment on the evening he received the injury; that it was a part of his duty to go about the yards and to warn off trespassers, and matters of that kind. The only question that could be raised would be as to the declarations of Califore. These were made shortly after the time he received the injury, and were made in response to inquiries from the police officers who had received a radio call to go out there. So if these declarations were within what is known as the *res gestae* rule, then there was ample evidence for the commissioner to act. This being true, the evidence being undisputed, the commissioner had the right to conclude that Califore, on the evening in question, in the course of his employment, went to the yards of the company, there engaged in his usual duties, and in the discharge of same met an injury by being assaulted by some trespasser upon the company's property. His duties, among others, were to guard against such trespassers. So, unless this evidence is to be entirely disregarded, and if it is competent, while it might not necessitate the finding, at the best, as against the contention that there was no competent evidence, it warranted the commissioner to hold as he did.

Swim v. Central Iowa Fuel Co., 204 Iowa, 546, 215 N. W. 603, is cited as laying down the rule contended for. The claim

in this case was denied by the commissioner, and from his decision an appeal was taken, and he was reversed. A letter written by a physician to an insurer of the employers' industrial risk, it was decided was incompetent to overthrow a prima facie showing of right of recovery on the part of the employee. The letter was written to state the complete history of the case, and in the light of the facts stated by him, he concluded that the insurance company was in no way responsible to claimant for the loss of his eye, "as he was totally blind in the right eye before he carried the insurance for the Central Iowa Fuel Company". There was evidence in the case of substantial character that the claimant had substantial vision in his right eye before, and the court held that this letter was merely hearsay and was not admissible to dispute that the claimant had substantial sight prior to the injury complained of. And held that the letter should have received no consideration, and with the elimination of the letter there was no evidence to conflict with the evidence in support of plaintiff's claim. Consequently, there is "not sufficient competent evidence in the record to warrant the making of the order" by the commissioner, and the district court was affirmed in its action reversing the commissioner.

We fail to see how these cases in any way help appellant in this case. We think that the declarations of Califore made shortly after the injury were admissible as substantial evidence, and as part of the *res gestae*, and that such is the rule laid down in Stukas v. Warfield-Pratt-Howell Co., 188 Iowa, 878, 175 N. W. 81. The plaintiff in that case was injured by an elevator, and suit was brought against the company by his administrator for the death of Stukas resulting from his injuries. The deceased, when found, was purple in the face, his eyes were kind of bulged out of his head and real bloodshot, and he was conscious. He was taken to the hospital, and referring to the operator of the elevator, he said the "son of a bitch" would not stop the elevator when he hollered. Others heard him. On his wife's arrival at the hospital, he said he was caught in the elevator; that he got his foot caught in the elevator, and he called to the elevator man to stop, but he kept right on. He did not say how he got his foot caught. He said he called to the elevator man to stop, and he was too frightened or did not know enough to stop.

These were all admitted as part of his testimony. The court says on page 888:

"We have repeatedly said that the proper test of admissibility of such statements is whether they relate to the principal transaction and are explanatory of it and are made under such circumstances of excitement still continuing as to show they are spontaneous and not the result of deliberation or design. Within this general rule the admissibility of the declaration under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike and the exact length of time is not mathematically controlling."

Vernon v. Iowa State Trav. Mens Ass'n, 158 Iowa, 597, 138 N. W. 696, lays down the same rule.

Hinnah v. Seaba, 193 Iowa, 1206, 188 N. W. 909, lays down the rule that statements relative to what took place at an encounter, even though made in response to nonleading questions, are admissible as part of the *res gestae*, when made at a time and place and under such circumstances as to preclude the idea of sinister motive, when they are such as to afford a reasonable or reliable explanation of the encounter. So held where something like an *hour* intervened between the occurrence and the statements in question.

Rothrock v. Cedar Rapids, 128 Iowa, 252, 103 N. W. 475, lays down the same rule. Likewise, Keyes v. City of Cedar Falls, 107 Iowa, 509, 78 N. W. 227.

So we conclude there is ample evidence to support the commissioner in his finding that the death of the deceased arose from injuries received in the course of his employment.

∎ This leaves only one other question to be determined, the one arising on the second assignment of error of appellant; i. e., that the deceased was engaged in interstate commerce at the time he received his injuries:

As to the proposition that this is controlled by the federal statutes, see Shanks v. Delaware, Lackawanna & Western Ry. Co., 239 U. S. 556, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797; C., B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; C. & E. I. R. R. Co. v. Industrial Com., 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367.

In the Shanks case, Shanks sued the railroad company for damages resulting from personal injuries while he was in its employ, and rested his right to recover on the Employers' Liability Act of Congress. The suit was brought in New York, pleading, however, the law of New Jersey. He recovered judgment, and it was affirmed on a review of the judgment made on a writ of error to the Supreme Court of the United States. The opinion says:

"The facts in the present case are these: The railroad company was engaged in both interstate and intrastate transportation, and was conducting an extensive machine shop for repairing parts of locomotives used in such transportation. While employed in this shop, Shanks was injured through the 'negligence of the company. Usually his work consisted in repairing certain parts of locomotives, but on the day of the injury he was engaged solely in taking down and putting into a new location an overhead countershaft—a heavy shop fixture —through which power was communicated to some of the machinery used in the repair work.

"The question for decision is, Was Shanks at the time of the injury employed in interstate commerce within the meaning of the employers' liability act? What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered." It lays down the rule that the true test is: Was the employee at the time of the injury engaged in interstate commerce, or in work so closely related to it as to be practically a part of it? The opinion then cites instances in which they had held it came under the interstate rule. It also says,

"Without departing from this test, we also have held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another, * * * and where an employee in a colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce. * * * In neither instance could the service indicated be said to be interstate transportation, or so closely related to it as to be practically a part of it."

In the Harrington case, a member of a railway yard switching crew engaged in switching loaded coal cars belonging to the railway company from a storage track to a coal shed or chutes was not then employed in interstate commerce within the meaning of the Federal Employers' Liability Act, although the coal thus placed was to be used by locomotives in interstate hauls.

In the case against the industrial commissioner of Illinois, one Thomas was an employee of the railway company, and was attempting to oil an electric motor while it was working; he was injured by having his hand cut on the gears. The railway was engaged in both interstate and intrastate commerce. The motor furnished power for hoisting coal into a chute, to be taken therefrom by, and for the use of, locomotive engines principally employed in the movement of interstate freight. An action was brought before the industrial commissioner of Illinois to recover compensation for the injury under the provisions of the Workmen's Compensation Act of Illinois (Smith-Hurd Rev. St. 1931, c. 48, sections 138-172). The court says:

"The contention that Thomas was employed in interstate commerce at the time of the injury rests upon the decisions of this court in Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794. In the Collins case, the employee, at the time of his injury, was operating a gasoline engine to pump water into a tank for the use of locomotives engaged in both interstate and intrastate commerce. In the Szary case, the duty of the employee was to dry sand by the application of heat for the use of locomotives operating in both kinds of commerce; and he was so employed when injured. In each case this court held that the employee was engaged in interstate commerce at the time of the injury, within the terms of the Federal Employers' Liability Act."

In commenting on said case, it mentions the Harrington case, and the rule laid down in the Shanks case, which is: "Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" And the court says:

"Manifestly, there was no such close or direct relation

to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use." And says: "We are unable to reconcile this decision with the rule deducible from the Collins and Szary cases, and it becomes our duty to determine which is authoritative. From a reading of the opinion in the Collins case, it is apparent that the test of the Shanks case was not followed; * * * the words 'interstate commerce' being inadvertently substituted for the words 'interstate transportation'. The Szary case is subject to the same criticism, since it simply followed the Collins case. Both cases are out of harmony with the general current of the decisions of this court, * * * and they are now definitely overruled. The Harrington case furnishes the correct rule, and, applying it, the judgment below must be affirmed."

So the question is not "interstate commerce" or "interstate transportation", but, Does it come under the federal or state act? And the decision of the federal court is conclusive.

Under the rule laid down in the Shanks case, and under the rule laid down in the Harrington case, and under the rule laid down in the Chicago & Erie Ill. Ry. case, Califore was not governed by the federal acts, but by the state acts. His work was not so intimately connected and associated with interstate transportation as to bring him under the Federal Employers' Liability Act. We have discussed all of the matters involved in this hearing necessary for its determination, and we hold that the case is one coming under the employers' liability act of the state of Iowa, and is not governed by the federal acts, and that the finding of the commissioner in this case was conclusive under the record here. For these reasons, the judgment below is affirmed.—Affirmed.

KINTZINGER, C. J., and DONEGAN, MITCHELL, HAMILTON, POWERS, and ALBERT, JJ., concur.