AGNES HAVERLY, Appellant, v. UNION CONSTRUCTION COMPANY et al., Appellees.

No. 46605.

C. A. Smedal, of Ames, for appellant.

Paul W. Steward, of Des Moines, for appellees.

HALE, C. J.— Action under the Iowa Workmen's Compensation Act against Union Construction Company and Paul Reis, as employer, and Liberty Mutual Insurance Company, insurance carrier, arising out of the death of claimant's husband. Claimant, Agnes Haverly, is the surviving spouse of Lyle Haverly, and on January 22, 1942, she filed application for arbitration for herself and minor child under the Workmen's Compensation Act, alleging that on or about August 18, 1941, while in the employ of Union Construction Company and Paul Reis, both residents of Iowa, and while employed by said employers near Kingston, Oklahoma, her husband sustained personal injuries arising out of and in the course of his employment resulting in his death. The amended and substituted answer admitted that Haverly sustained fatal injuries while in the employ of the Union Construction Company and Paul Reis, admitted the capacity of the company and Reis as a copartnership, and that the maximum rate of compensation would apply. The answer further denied that the contract of employment was made in Iowa, but alleged

that it was made in the town of Denison, Texas, for services to be wholly and exclusively performed in the state of Oklahoma in connection with employer's business and that the provisions of the Iowa Workmen's Compensation Act are not available to claimant, and claimed that the Iowa Industrial Commissioner is without jurisdiction to hear and determine the claim. The deputy industrial commissioner, sitting as the sole arbitrator, and the industrial commissioner, on review, both held that the Iowa Workmen's Compensation Act applied. On appeal the district court reversed the commissioner and his deputy, finding that claimant had failed to establish that there was a contract of employment entered into in the state of Iowa between decedent and the copartnership employer, which is a condition precedent to the attaching of the jurisdiction of the workmen's-compensation laws of the state of Iowa and the jurisdiction and authority of the industrial commissioner, and not sufficient competent evidence in the record to warrant or support the commissioner's findings, decision, and award. And the court further found that the work to be performed was to be performed wholly and exclusively outside of the state of Iowa, that the workmen's-compensation laws of the state of Iowa did not apply, and that the industrial commissioner was without jurisdiction.

The case comes to us on appeal from the district court. The questions presented are: (1) Whether there is evidence in the record to sustain the commissioner's finding that the employment contract was consummated in Iowa and (2) whether a contract of employment to be performed wholly within another state is governed by the laws of the state of performance.

Since 1932 Agnes Haverly and her husband had lived in Ames, Iowa, where Mr. Haverly was employed by Ben Cole & Son, contractors. He continued in their employ for eight years until he went to Oklahoma. The widow has never remarried. The Union Construction Company is an Iowa corporation, with offices in Des Moines. P. C. Fletter is the president of such corporation. Paul B. Reis is an individual engaged in construction work. The corporation and Reis each carried on a separate business but on several occasions had been joint bidders

on construction projects and for each of said projects they entered into a separate contract covering the particular project only. There was no general or continuing partnership between them. In 1941 they jointly bid on a project near Durant, Oklahoma, for the construction of a railroad causeway. Their bid was successful and on June 10, 1941, before the work was started, they entered into a partnership agreement limited to the one job, the corporation and Reis both continuing to carry on their individual businesses. Since 1937 the only project in which they were jointly interested was this Oklahoma job.

A local office was maintained on the job in Oklahoma. Mr. Reis was superintendent of the work and Anderson, a son-in-law of Fletter, who was also an officer of the construction company, was on the job as timekeeper. Help was employed by both Reis and Anderson and the time record was kept in Oklahoma, one copy being sent to the government, one to the office in Des Moines, and one retained in Oklahoma. When the copy arrived in Des Moines that office would reimburse the Oklahoma office for the amount shown but the pay roll would come to the Des Moines office for audit and approval. There was evidence that whatever was done on the job, as well as the management and control, had to be approved by the Union Construction Company before anything of importance was done. The office on the job was a temporary structure, but the business of the construction company and Reis as partners was conducted through the Des Moines office of the company. In short, as related by the president of the construction company, the pay roll was made in Oklahoma but bills were paid in Des Moines, where the books were kept in the office of the Union Construction Company as one of the partners. The temporary office on the job was for convenience and such purposes as checking bills and invoices against materials delivered and making up pay rolls. This was the first employment of Haverly by the construction company and Reis.

I. The first proposition to be determined is, Was the contract of employment in this case entered into in Iowa? As to this the burden of proof is upon the claimant. Of course, in the case of a conflict in the testimony the finding of the

commissioner would control. This is true where there are disputed questions of fact in the record. There is jurisdiction on appeal if the commissioner acted without or in excess of his powers, or if the facts found by the commissioner do not support the order or decree, or if there is not sufficient competent evidence to warrant the making of the order. There must be some evidence, either direct or circumstantial, to support the commissioner's finding. In this case there is no direct evidence as to the making of the contract. But the award may be founded on circumstantial evidence and the fair and reasonable inferences to be drawn from the evidence. Everts v. Jorgensen, 227 Iowa 818, 289 N. W. 11. Such circumstantial evidence must be governed by the rules which ordinarily apply to that class of evidence. We have held that a fact is not proved by circumstantial evidence unless the conclusion sought to be drawn is more probable than any other theory. Comparet v. Wm. H. Metz Co., 222 Iowa 1328, 271 N. W. 847; Jakeway v. Allen, 227 Iowa 1182, 290 N. W. 507; Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425; Latham v. Des Moines Electric Light Co., 229 Iowa 1199, 296 N. W. 372. It is also true, as argued by appellant, that the workmen's-compensation statute is to be liberally construed, and where possible evils would result under either of two constructions, that which is to the advantage of the employee must control.

It is the opinion of this court that there was sufficient circumstantial evidence to serve as a basis for the inference on the part of the commissioner that the contract was an Iowa contract. All parties thereto were residents of this state, Haverly being a resident of Ames, the Union Construction Company an Iowa corporation, with its place of business in Des Moines, Fletter, the president of the corporation, a resident of Des Moines and acquainted with Haverly from the latter's boyhood, and Reis, the partner of the construction company, also a resident of Des Moines and a former resident of Ames. The written contract between the construction company and Reis for the job on which Haverly was employed was entered into on June 10, 1941, at Des Moines. All parties were acquainted and the record shows that immediately before the

work was begun decedent left his employment at Ames and went to Oklahoma with his wife, stopping at Denison, Texas, where he met Reis the day before he commenced work.

Appellees assert that the final terms of the employment were entered into at Denison, Texas. There is, however, no evidence that there was any further agreement or any change in the contract of employment at that time. The commissioner was authorized by the facts in evidence to find that there was an understanding prior to his leaving Ames that Haverly was to engage in work on the job in Oklahoma. As to the manner in which the work was carried on, Fletter testified:

"Q. If you had more than one job going at the same time or if you completed a job and had other work, you would shift your crew from job to job wherever it might be? A. Right. * * * Q. In this case, if the Union Construction Company and Paul Reis had a job in another state, you would shift that crew to that state, irrespective of where their legal settlement was? A. Right. If they would go. * * * Q. So that I am to understand you, irrespective of where your work might be, where your construction work might be, irrespective of the state, you would move your crew from job to job as the circumstances warranted? A. That is true."

Therefore, Haverly, when he took up his new work, shifted from a position in which there had been a certain degree of permanency to one where his permanency of settlement was not assured. The commissioner would be justified in inferring that such a change in decedent's manner of life was a circumstance to be considered as indicating knowledge of the terms of his new employment before he left Iowa. No evidence to the contrary was offered. Reis, who was one of the persons who employed the help, did not testify and was not called as a witness. The argument that a man would leave his fixed place of residence, taking his family with him, travel hundreds of miles and immediately enter upon a job the terms of which were not fixed and definite, would be contrary to our knowledge and experience. It is suggested that the head of the firm where he had formerly been employed had recently died and that

therefore a possible change in that firm would have indicated his employment was not certain. Such a conclusion is hardly tenable. It would not justify Haverly in making a change of residence to take up employment the terms of which were not already fixed and certain. It is not material whether his action in taking the long trip was inspired by the prospect of better employment or fear of losing his present position. Whatever his motive in going to Oklahoma, it is not conceivable that he made this change, whether abrupt or long considered, without knowledge of the work he was entering into, and such knowledge, under the circumstances and evidence in this case, could rightly be assumed to have been in his mind when he left Iowa. It is true that it is the general rule that the place of completion of the contract determines the place of the contract. The contract is complete when by words or action the final acceptance of the work is accomplished. This could be considered as being the time when he left his position and before starting for Oklahoma.

The rule is laid down in Chicago, R. I. & P. R. Co. v. Lundquist, 206 Iowa 499, 505, 221 N. W. 228, 230 [certiorari denied 278 U. S. 658, 49 S. Ct. 187, 73 L. Ed. 566] :

"A contract is made at the time and place where the last act necessary to a complete meeting of the minds of the parties is performed."

The evidence justifies the commissioner in his conclusions. We hold that the acceptance of the employment which had been offered to Haverly took place when he started to the place of his new employment or prior thereto. It would be unreasonable to suppose that the trip was made merely for the purpose of applying for a position. There was sufficient evidence to warrant the finding of the commissioner that the contract of employment was an Iowa contract entered into by residents of Iowa. The evidence presented a question of fact and as such the ruling of the commissioner is binding.

II. The next proposition is, Does the Iowa compensation statute apply to this Iowa contract when the work was to be wholly performed in Oklahoma? The commissioner held it did; the district court held otherwise.

The contention of appellees is that before recovery can be had under the Iowa statute claimant must establish, and the burden of proof is upon such claimant to show: (1) that the contract, made either in Iowa or elsewhere, is to be performed wholly in Iowa or (2) that it is an Iowa contract providing for at least partial performance in this state. Numerous authorities are cited, including Elk River Coal & Lbr. Co. v. Funk, 222 Iowa 1222, 1228, 271 N. W. 204, 208, 110 A. L. R. 1415. This was a certiorari proceeding involving the right of a foreign corporation to appear specially and such right was upheld by this court. The only other question determined was whether the commissioner had acquired jurisdiction of plaintiff, a West Virginia corporation, by a notice by registered mail. As stated:

"It must be borne in mind that the specific question before us is not the question of whether or not the claimant has a right to recover."

Any other matter discussed in the opinion was dictum. Even if the right to recover had been in issue, the reference to Watts v. Long, 116 Neb. 656, 218 N. W. 410, 59 A. L. R. 728, was to a case different in its facts, the employer being a resident of Kansas and the contract not incident to any industry carried on in Nebraska. In a later case, wherein the facts are very similar to the present case and where the Watts case was reviewed—Stone v. Thomson Co., 124 Neb. 181, 245 N. W. 600— the action was held maintainable in Nebraska.

The question is not quite so definitely settled as appellees urge. It is said in 11 Am. Jur. 402, section 118:

"A contract which is made in one jurisdiction to be performed in another presents a complex question."

It is claimed that the question has been determined in Iowa, but this court has never definitely decided the rule under the Workmen's Compensation Law as to a contract executed in this state to be wholly performed in another state. The courts of this country are not in agreement upon the effect of such a contract. Many cases are cited for and against the question where the contract is within and the injury outside

the jurisdiction. The matter is treated in 71 C. J. 304, section 46. To review the many authorities cited would be of no benefit and would extend this opinion to too great a length to be of value. The text says:

"While it has been held in a few jurisdictions that the operation of a compensation act will not be extended to injuries received outside of the state in the absence of a plain legislative intent, or of a contract between employer and employee that the law of the place of contract shall apply to actions in tort arising out of the relation, the acts have been thus extended in three of those jurisdictions following statutory amendments manifesting such an intent by making the act apply where a contract of employment is entered into within the state and an injury is sustained outside of it * * *."

And id. 309, 310, section 46:

"* * * but it has been held that no adequate reason can be given for differentiating between a contract of employment to be principally performed in another state and one to be solely performed there, or between one under which all the services are to be, and one performed in the state, and one under which half are * * *.

"The intention that a compensation act shall apply to injuries received outside the state will not be presumed, but a court is not precluded from finding that the act so applies by the fact that it does not in terms declare that it shall have such effect; thus, it is sufficient that such intention may reasonably be inferred from the language of the act or from its purpose, subject matter, or history. Apart from the nature of the liability created, the intent of the legislature to allow a compensation act extraterritorial effect has been held to be indicated by the fact that its definition of the word 'employee' includes a person engaged in the course of his employment away from the plant of the employer * * *."

It has been our holding throughout that the Iowa Workmen's Compensation Law is elective and contractual. Pierce v. Bekins V. & S. Co., 185 Iowa 1346, 172 N. W. 191; Elk River

Coal & Lbr. Co. v. Funk, supra; Cullamore v. Groneweg & Schoentgen Co., 219 Iowa 200, 257 N. W. 561.

There being no election to reject, the acceptance is presumed. Section 1363, Code of Iowa, 1939. And unless there is an election to reject, which does not appear in this case, the terms of the Iowa statute are incorporated within and made a part of such contract.

Section 1421(6), Code of Iowa, 1939, provides:

"The words 'personal injury arising out of and in the course of the employment' shall include injuries to employees whose services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business."

Appellant insists that the words "personal injury arising out of and in the course of the employment" apply to employees wherever their services may be required, including so-called "extraterritorial employment," and that the word "elsewhere" has been construed by this court as applying to all cases regardless of where the work is to be performed. Citing Pierce v. Bekins V. & S. Co., supra; and Cullamore v. Groneweg & Schoentgen Co., supra.

In Pierce v. Bekins V. & S. Co., 185 Iowa 1346, 1356, 172 N. W. 191, 194, in the discussion of the case, it is said:

"It is not the question whether the Iowa act operates in another state. Parties in Iowa may contract that, if one be injured in Nebraska in course of the employment, that the method of settlement for the injury shall be a described part of the statute law of New Jersey; and, if such an injury does occur in Nebraska, settlement can be enforced in Iowa on the terms of the New Jersey statute, without a thought that the statute law of New Jersey is the law of Nebraska. We know of no reason why parties may not, by contract, fix standards of settlement to be any definitely contracted-for method, unless there be some statutory or constitutional objection to such an agreement. The entire structure of the Iowa act not only fails

to prohibit such a contract, but, by being elective, creates a contractual relation under a contract providing for settlement on a standard fixed by the Iowa act. Such a contract is no more objectionable than one providing for a common-law arbitration."

In that case the contract of employment was made in Iowa but the injury occurred in Nebraska. It differs from the present case in the fact that while the principal employment was truck driving, a part of the work was performed in Iowa. And the same is true of the Cullamore case. In neither case was the work to be performed exclusively in another state. But, bearing in mind the rule heretofore stated, that the parties may agree in their contract as to the rule of law which shall govern its interpretation, and bearing also in mind that in our statute there is no limit provided for the place where the compensable injury may occur, the conclusion would be that this Iowa statute may as logically be applicable to a situation where no part of the labor shall be performed within this state as to a situation where part of the labor is to be performed in Iowa and part in some other state.

Our court has never held that such a contract as is here considered shall not be within the terms of the Workmen's Compensation Law. The only doubt, if any, was expressed in Pierce v. Bekins V. & S. Co., supra, 185 Iowa 1346, 1354, 172 N. W. 191, 193, by the words:

"With the possible exception of contracts wherein it is intended that the same shall be performed wholly without the state, the courts will apply the domestic compensation law where the contract of employment was entered into within the state, on the theory that the obligation sought to be enforced is based on contract, and not on tort. See Corpus Juris, Title Workmen's Compensation Acts, Div. IV, Conflict of Laws, Section 28."

The case of Cullamore v. Groneweg & Schoentgen Co., supra, presents a long array of authorities sustaining the holding that where the duties of the injured party were to be performed largely outside of Iowa the Workmen's Compensation Act of this state, when not rejected, becomes a part of the con-

tract of employment. The point in issue was whether the Iowa statute could properly be given extraterritorial effect.

In distinguishing the facts in the Cullamore case from those in the Pierce case, Justice Stevens says at page 202 of 219 Iowa, page 562 of 257 N. W.:

"* * * the difference in the facts thereof and the facts of the present controversy does not necessarily call for a contrary conclusion."

And in reviewing the compensation law, it is stated:

"The legislature has not seen fit to limit the scope and effect of our compensation statutes within state boundaries. It could do this or it could give them wider application. The latter could be made so by contract. The deceased employee carried on his employment in Nebraska, making the necessary reports and visits to his employer for the benefit and profit of the employer's business. The question is not whether a decision one way or the other will be more convenient or profitable to the employee. The statutes must be interpreted and construed according to their purpose, meaning, and intent. It is significant that the legislature has seen fit to provide that 'If the injury occurred outside this state the hearings of the board shall be held in the county seat of this state which is nearest to the place where the injury occurred. * * *' Section 1440, Code 1931. The act itself, therefore, recognizes that compensation is to be available to an employee notwithstanding the injuries are received in some other jurisdiction."

Justice Stevens also refers to the many cases in the Reports. Without referring to the large number of authorities, we may say that some are based upon express provisions of the statutes, and others, as we have already indicated, upon general statutory provisions such as are found in our own state, while others make no reference to the provisions of the statute as a basis for the holding. But we are satisfied that the clear and greater weight of authority sustains the view taken by the commissioner in this case.

In the treatment of Conflict of Laws, in the American Law Institute's Restatement of the Law, the rule is definitely stated.

290

See page 486, section 398, where the rule as established by the American Law Institute is as follows:

"A workman who enters into a contract of employment in a state in which a Workmen's Compensation Act is in force can recover compensation under the Act in that state for bodily harm arising out of and in the course of the employment, although the harm was suffered in another state, unless the Act provides in specific words or is so interpreted as to apply only to bodily harm occurring within the state."

As we have seen, our court has never so ruled as to come within the exception suggested in the above rule. On the contrary, our decisions have tended from the beginning to liberalize the act so as to make it apply and conform to its intent and purpose. See Towers v. Watson Bros. Transp. Co., 229 Iowa 387, 294 N. W. 594.

We must hold with the commissioner that this Iowa contract between residents of Iowa, including, as it must, the provisions of the Workmen's Compensation Law, applies to the fatal injuries sustained by appellant's decedent and that she is entitled to the award granted her by the commissioner. The ruling of the district court, therefore, must be, and it is, reversed. —Reversed.

MULRONEY, GARFIELD, WENNERSTRUM, MANTZ, BLISS, and OLIVER, JJ., concur.

SMITH and MILLER, JJ., dissent.

SMITH, J. (dissenting)—Much as I feel that claimant herein should receive compensation, I cannot see that she has shown her right to it in this proceeding. The majority opinion holds that there is evidence in the record to support the commissioner's finding that the contract of employment was technically made in Iowa. With this I am unable to agree, though I do not deem it decisive of the case.

The majority opinion then proceeds to hold that because the contract was technically entered into in Iowa, the injury must be compensable under the Iowa statute. I cannot concur.

I. The employer here was a copartnership composed of

defendants Union Construction Company, an Iowa corporation, and Paul Reis, an individual, who resided in Iowa at the time the partnership agreement was signed on June 10, 1941. The partnership was not a general continuing one but was formed solely to carry out a contract for certain work in Oklahoma. They had entered into several similar partnership contracts before, the last one being in 1937. Reis was a bridge contractor and defendant company was engaged in road work. On those former occasions they had bid jointly and each time when successful had formed a separate partnership for each particular job.

Under the present agreement the company furnished two thirds and Reis one third of the capital and profits were to be divided in the same proportions. The partnership commenced work on the job about June 10, 1941.

Reis and Anderson, an officer of defendant company, moved their families to Oklahoma and were in charge of the work. Reis was superintendent. They maintained an office on the job, where the pay roll was made out and from which the employees were paid by checks upon a Durant, Oklahoma, bank. It is true the pay rolls were audited and approved in the office of defendant company in Des Moines. Both Reis and Anderson had charge of the employment of help in the business office there on the job.

The partnership carried workmen's compensation in defendant insurance company. It was applied for down there on the job but had to be approved by the president of the Union Construction Company in Des Moines.

On or about July 5th the Haverly family left Ames, Iowa, where they had lived for nearly ten years, and went to Denison, Texas, near the work in Oklahoma. Claimant, over objection, testified they reported at Denison at the "direction" of defendant Reis. Claimant has never met Reis. All she knew about any arrangement between him and her husband was what the latter had told her.

Claimant did not testify as to the contract of employment, nor did any other witness. There is no evidence of any prior correspondence or meeting between her husband and Reis, no

evidence that the two men met in Denison or had ever met prior to that time.

The record is barren of any evidence showing who employed claimant's husband, or where or how the contract of employment was entered into. Mr. Fletter, president of defendant company, was a witness for claimant, but he had not known Haverly since the latter was a little boy. There is no evidence that he employed anyone for the Oklahoma job.

We have the bare fact that decedent and his family left Ames, arrived in Denison, Texas, and immediately commenced work on the job in Oklahoma near there, where some six weeks later he suffered the injury that resulted in his death.

The majority opinion says "that immediately before the work was begun decedent left his employment at Ames and went to Oklahoma * * *." I do not so read the record. Fletter testified: "Q. You started work on that project sometime shortly after June 10, 1941, did you? A. Yes, I think we did, I wouldn't say the date, though." Claimant testifies that decedent and she left Ames after July 4th, "I think the fifth." This is the whole record.

Is it to be assumed that Reis had employed decedent before the latter and his family moved to Oklahoma? If so, was it done in Iowa? There is no suggestion that the men had ever met except that at some remote time Reis lived in Ames. Was it done by correspondence? If so, which party initiated the negotiations? Where was the "last act" performed, referred to in the majority opinion by quotation from Chicago, R. I. & P. R. Co. v. Lundquist, 206 Iowa 499, 221 N. W. 228? See, also, 11 Am. Jur., Conflict of Laws, section 100. The record does not show by any direct or circumstantial evidence.

It is conceded the burden was on claimant. If the contract was made by correspondence it is just as reasonable to assume that Haverly wrote for a job as that Reis opened the correspondence. And it is just as reasonable to assume that Haverly proposed the terms upon which he was willing to come down and that Reis accepted them as to make the opposite assumption. In that case the last act will have been performed in Oklahoma. 17 C. J. S., Contracts, section 356. The circum-

stances shown by the record are just as consistent with an Oklahoma contract as with an Iowa one. They do not in any way meet the test that circumstantial evidence must meet. See Klumb v. Iowa State Traveling Men's Assn., 141 Iowa 519, 120 N. W. 81; Comparet v. Wm. H. Metz Co., 222 Iowa 1328, 271 N. W. 847; and cases cited in majority opinion.

It is not necessary, therefore, to assume, as do the majority, that if the contract was not made in Iowa decedent must have gone down to Oklahoma on an uncertainty. Nor is there any evidence that he abandoned his former job at Ames in order to accept this employment. The record does not show just why he quit working for Ben Cole & Son. There is no suggestion in the evidence to explain the termination of that relationship.

I am forced to conclude that there is no competent evidence to support the finding that the contract of employment in this case was made in Iowa.

II. It is conceded by all that the employer-copartnership was organized solely for the one job in Oklahoma and that Haverly's employment was only for services to be performed in Oklahoma. Wherever the contract of hire may have been made, it was to be performed outside of Iowa. It was not incidental to any industry or business in Iowa. The *partnership* had no Iowa business. The employee relationship was clearly and entirely outside the state. The employee worked in Oklahoma and was paid there.

Under these circumstances I do not believe the claim for compensation is ruled by the Iowa statute. It did not enter into and become a part of the contract of employment.

This is not a case in which it is contended that the claimant is deprived of the right to compensation merely because the injury occurred outside the state. In cases where the employment is incident to a business in Iowa and the contract of hire is made in Iowa, the Iowa law becomes a part of the contract. Pierce v. Bekins V. & S. Co., 185 Iowa 1346, 172 N. W. 191, and Cullamore v. Groneweg & Schoentgen, 219 Iowa 200, 257 N. W. 561, are of that character.

In 71 C. J., Workmen's Compensation Acts, section 45, it is said:

''The test, in determining whether a state compensation law applies to a particular injury, has been held to be, in all cases, *the place where the employment is located, or is to be performed,* and the place where the contract of employment is entered into has been held not decisive and not necessarily controlling, so that, without reference to the element of the place where the contract of employment was made, such authorities refuse to apply the compensation law of the state where the hiring is for work at a fixed place outside the state, even if the work is connected with a business conducted within it, or, as otherwise stated, where the contract is to be performed entirely outside the state, on the principle that the law applies only to employment within the state, and that award of compensation may be made for injuries sustained outside the state *only where they arise out of and in the course of employment which is located within it.''* (Italics supplied.) Citing Cameron v. Ellis Constr. Co., 252 N. Y. 394, 169 N. E. 622; Leader Specialty Co. v. Chapman, 85 Ind. App. 296, 152 N. E. 872.

In Elk River Coal & Lbr. Co. v. Funk, 222 Iowa 1222, 1230, 271 N. W. 204, 209, 110 A. L. R. 1415, we said, after a discussion of the Bekins and Cullamore cases, supra:

''However, it must be held that if a contract of hire made in this state is to be performed wholly outside of this state, the Iowa law would not apply.''

While this language may have been technical dictum, it was in a well-considered opinion and entitled to consideration. And it is to be noted that in the case of Pierce v. Bekins V. & S. Co., supra, 185 Iowa 1346, 1354, 172 N. W. 191, 193, we carefully left open the very question presented here:

''With the possible exception of contracts wherein it is intended that the same shall be performed wholly without the state * * *.''

The majority opinion quotes briefly from 11 Am. Jur., Conflict of Laws, section 118, but does not go further into the paragraph quoted from. A few lines farther down it is said:

''For this reason and others, in many instances the general

statement that the law of the place of making governs is modified to the effect that a contract is governed by the laws of the country in which it is entered into, *unless it is executed with a view to its performance in another country."* (Italics supplied.)

And on the next page, but in the same section, the text writer sets out the rules laid down by the United States Supreme Court:

"(1) Matters bearing upon the execution, interpretation, and validity are determined by the law of the place where the contract is made; (2) matters connected with the performance are regulated by the law of the place where the contract by its terms is to be performed; and (3) matters relating to procedure depend upon the law of the forum." The author adds: "These three general rules have been adopted and applied by many jurisdictions in a long list of cases involving almost every conceivable kind of contract." 11 Am. Jur., Conflict of Laws, section 118.

I readily concede that the authorities are not entirely harmonious on the question presented here. It may be some of the apparent conflict is due to variations in circumstances. It is sometimes said to depend on the intention of the parties. Claimant's husband moved to Oklahoma for work that would probably last a year. He was subject to injuries that might temporarily incapacitate him and for which he would be entitled to compensation. Is it to be presumed that in such event it was intended, in case of controversy, he would have to come back to Iowa to litigate it? I cannot so hold. Regardless of the technical place of contract, this was an Oklahoma employment. The relationship of employer and employee was in that state and it seems clear to me that matters connected with the performance of the contract should be regulated by the laws there.

I would affirm the decision of the district court.

MILLER, J., joins in this dissent.