RUTH SCHMIDT, widow of WALTER E. SCHMIDT, appellee, v. PITTSBURGH PLATE GLASS COMPANY, appellant.

No. 48093.

(Reported in 55 N.W.2d 227)

October 14, 1952.

Corcoran & Kennedy, of Sibley, and Bailey, Voorhees, Woods & Fuller, of Sioux Falls, South Dakota, for appellant.

G. C. Murray, of Sheldon, and Stordahl, May & Boe, of Sioux Falls, South Dakota, for appellee.

SMITH, J.—Plaintiff's deceased husband was employed by defendant as a salesman out of its branch office at Sioux Falls, South Dakota. His territory embraced six northwest Iowa counties including Osceola County. He was injured June 13, 1950, in said county, at about 11:30 p.m. while on the road between Sibley and Sheldon. He died some days later at Sibley.

On February 1, 1951, compensation was awarded plaintiff by a deputy Iowa Industrial Commissioner on the transcript of an earlier hearing before another deputy who had died before deciding the matter. On review the award was affirmed by the commissioner, and his decision was later upheld by the district court. This appeal by the defendant-employer followed.

I. Defendant urges that the Iowa Industrial Commissioner acted in excess of his power in assuming jurisdiction of a claim arising out of a South Dakota contract between South Dakota parties and in refusing to apply the South Dakota Workmen's Compensation law.

The petition for arbitration herein was filed September 28, 1950. Defendant-employer answered October 17, alleging, among other defenses, that the contract was a South Dakota contract, that the Workmen's Compensation law of that state governed and formed a part of the contract and that an action was pending in South Dakota between the same parties, arising out of the same injury and based on the same facts as were involved in the Iowa proceeding.

It was shown (subject to plaintiff's objection as to lack of competency, relevance and materiality) that defendant had filed a petition (dated August 17, 1950) before the industrial commissioner of South Dakota, asking a hearing and a determination that Mr. Schmidt's injuries and death did *not* arise out of or in

the course of his employment. A printed copy of the South Dakota Workmen's Compensation law was also received subject to the same objection. It was conceded by defendant that the injury to the employee occurred in Iowa and that there had been no determination of the proceeding in South Dakota.

Plaintiff offered evidence, also received subject to objection (this time by defendant), that the South Dakota Circuit Court on December 1, 1950, had granted Mrs. Schmidt an interlocutory order enjoining defendant-employer and the South Dakota commissioner from proceeding in that compensation hearing "until further order" of that court.

II. Defendant's brief and argument at this point is predicated upon the full faith and credit clause, Article IV, section 1, Constitution of the United States, and upon the 1948 Act of Congress (28 U. S. C. A., section 1738) which provides that acts of state legislatures as well as state judicial proceedings "shall have the same full faith and credit in every court * * * as they have by law or usage in the courts of" the state "from which they are taken."

(No contention is argued under the general theory of "another action pending".)

Defendant's argument is ingenious but we deem it unsound. The decision in Pacific Employers Ins. Co. v. Industrial Accident Comm., 306 U. S. 493, 500–502, 59 S. Ct. 629, 632, 633, 83 L. Ed. 940, seems conclusive. It involved a Massachusetts contract of employment and an injury to the employee thereunder in California. It was argued the Massachusetts Act fixed the employee's right to compensation. The decision held the full faith and credit clause did not apply, saying: "The very nature of the federal union of states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate."

The opinion quotes from Alaska Packers Assn. v. Industrial Accident Comm., 294 U. S. 532, 547, 55 S. Ct. 518, 523, 79 L. Ed. 1044: "A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum,

would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be [enforced] in its own."

The opinion (page 546) in the Alaska Packers Association case also says: "It has often been recognized by this court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy", citing various cases.

Defendant cites a later decision, Hughes v. Fetter, 341 U. S. 609, 612, 71 S. Ct. 980, 982, 95 L. Ed. 1212, not a compensation case but one which involved refusal of the Wisconsin courts to take jurisdiction of an action for a death occurring in Illinois. The cause of action was one created by the Illinois Wrongful Death Act not recognized by the Wisconsin statute which created a right of action only for deaths caused in that state. The U. S. Supreme Court (four justices dissenting) held Wisconsin's policy "must give way", arguing "that state has no real feeling of antagonism against wrongful death suits in general" but on the contrary provided a forum "for cases of this nature, the exclusionary rule extending only so far as to bar actions for death not caused locally."

Defendant clings to a footnote to this case suggesting that a revision of the Judicial Code, since the earlier one, may have broadened its effect as to *statutes* as distinguished from *judgments* of sister states. We do not think the cited revision has met the decision in Pacific Employers Ins. Co. v. Industrial Accident Comm., supra.

Our own decisions can afford defendant no comfort on this question. The somewhat recent case, Haverly v. Union Construction Co., 236 Iowa 278, 18 N.W.2d 629, while establishing the right to relief under the law of the state in which the contract of employment was made does not purport to preclude such relief under the law of the state where the employment contract was to be, and was being, performed, and in which the injury occurred. The opinion cites the Restatement of the Law of Conflict of Laws, section 398, page 486, in support of the decision. But section 399 on page 487 of that same authority

is the one applicable here. It states: "* * * a workman may recover in a state in which he sustains harm under the Workmen's Compensation Act of that state although the contract of employment was made in another state, unless the Act provides in specific words or is so interpreted as to apply only when the contract of employment is made within the state."

What we have said as to the opinion in the Haverly case is equally pertinent as to decisions in Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 172 N.W. 191, and Cullamore v. Groneweg & Schoentgen Co., 219 Iowa 200, 257 N.W. 561, cited by defendant. They do not deny the right to seek compensation in the state where the contract was being performed.

██ We find no Iowa case that does so hold. In 71 C. J., Workmen's Compensation Acts, section 45, page 303, it is said the test has been held to be "the place where the employment is located, *or is to be performed*" (emphasis is ours) and that "the place where the contract * * * is entered into has been held not decisive and not necessarily controlling."

Similarly in 58 Am. Jur., Workmen's Compensation, section 69, it is said: "But the full faith and credit clause * * * does not operate to make the compensation act of the state where the contract * * * was made, and in which the parties reside, * * * a defense to a proceeding brought under the compensation act of the state in which the injury occurred, where the statute does not preclude recovery under the law of another state", citing Ohio v. Chattanooga Boiler & Tank Co., 289 U. S. 439, 53 S. Ct. 663, 77 L. Ed. 1307.

██ III. Defendant also contends the award was based on incompetent evidence of the employee's declarations the evening of and before the injury.

His duty was to sell glass and paint. He was defendant-company's only salesman representative in the Osceola County territory. The branch manager on cross-examination admitted:

"The duty of the salesman is to call on business representatives in the respective counties and try to help increase the business in behalf of the company. The salesmen were what might be termed good will emissaries in behalf of the company * * *. If there was anything that came to Mr. Schmidt's atten-

tion indicating there was a big contract in the making * * * he would immediately call or contact the Sioux Falls office. If there was a catastrophe through a severe hailstorm or wind damage, we would expect him to call the office."

Schmidt was in Sibley the afternoon of June 13 and' made a good-will call on Mr. McCarty, defendant's local representative. They went over to the restaurant for a cup of coffee and noticed funnel-shaped clouds. He told McCarty he was going to Sheldon. It is seventeen or eighteen miles south of Sibley over the county line in O'Brien County.

At Sheldon that evening he met Mr. Pohlen, proprietor of an appliance and plumbing business there, but formerly an employee of a lumber company during which time he purchased products of defendant-company through Mr. Schmidt.

Pohlen testified Schmidt would call on him every six weeks or two months after he left the lumber company: "He talked to me about business. He wanted to sell me mirrors and also paints * * * trying to get me to take on" defendant's products.

Pohlen had also noticed the funnel-shaped clouds in the direction of Sibley. That evening he and Schmidt drove up to Sibley. Over defendant's objections that it was a conclusion and "obviously based on something the deceased told him and is hearsay" he testified: "We drove through town, seeing if there was any damage from this storm that I saw here." (The hearing was at Sibley.) Over the same objections the witness testified to inquiries made by Schmidt as to whether there had been any storm damage; also conversation between the two men on their way up to Sibley as to the purpose of the trip being "to see if there was any damage up here so if there were he could make a trip up here in the morning * * *." The Sheldon newspaper reported the next day: "Tornado funnels were seen in northwest Iowa Tuesday afternoon, but they passed over without doing any damage. * * * [they] struck momentarily southeast of Sibley, sending up dust clouds."

Pohlen also said that on the trip there was conversation "respecting my handling the lines and wares and merchandise of the Pittsburgh Plate Glass Company in my own business. The conversation was he wanted me to handle his mirrors * * * and

he was trying to see if I would order some from him."

On the way back to Sheldon the accident occurred which resulted in Schmidt's injury and later his death. The obvious purpose of this testimony was to show the employee was at the time of the injury in the course of his employment. Defendant in argument refers to conversations as self-serving declarations and contends the trip was purely social.

Defendant cites DeLong v. Iowa State Highway Comm., 229 Iowa 700, 717, 295 N.W. 91, 99, a compensation case, as authority that testimony of this character was inadmissible. But the decision there related to the admissibility of hearsay testimony of statements made to the doctor by the injured employee *after* the injury. The decision held it was admissible as constituting the basis of the doctor's opinion evidence but "was hearsay, and not substantive, testimony, with respect to proving the truth" of the facts stated.

.The distinction between such a case and the one. presented here is apparent. Schmidt's statements and acts shortly *prior to the injury* constituted in effect *substantive* evidence as to whether he was or was not in the course of his employment. His employment required of him certain conduct. Surely evidence of such conduct would not be hearsay even though consisting in part of his own statements. Nor would such statements before the accident be self-serving in any sense. They rather constitute res gestae in their relation to one element or issue of the cause of action, viz., "was the employee in the course of his employment?"

How else could such issue be proved or disproved save by showing what he was doing and saying on the occasion of and immediately preceding the injury? The statements testified to were so closely connected as to constitute a part of the transaction—not a part of the accident but a part of the "course of employment."

In 20 Am. Jur., Evidence, section 664, it is pertinently said: "There is a distinct class of cases comprising statements which themselves are facts constituting part of the transaction under investigation and which are admissible in evidence under the rule of res gestae. The motive, character, and object of an act are

frequently indicated by what was said by the person engaged in the act. Such statements are in the nature of verbal acts and are admissible in evidence with the remainder of the transaction which they illustrate."

And in 32 C. J. S., Evidence, section 403, page 21, the test of admissibility is stated to be "whether the act, declaration, or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as a part of the transaction itself, and also whether it clearly negatives any premeditation or purpose to manufacture testimony."

IV. We think the testimony of what the employee was saying and doing the night of his injury was admissible and that there was sufficient competent evidence to sustain the finding that the employee was in the course of his employment when he suffered the injury.

The deputy commissioner found: "There is competent testimony that the employee made the trip from Sheldon to Sibley in the interest of his employment." The commissioner reviewed the record and found "the deceased at the time of his injury was engaged in looking after the interests of his employer, both in investigation of the effects of the storm and in promoting friendly relations and possible future business with a prospective customer." The district court "approved, ratified and affirmed" the findings and award.

Our statute, section 86.29, Code of 1950, provides: "In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive." We have treated this as requiring application of the same rule as in jury cases. Reddick v. Grand Union Tea Co., 230 Iowa 108, 114, 296 N.W. 800. Our cases seem unanimous on the proposition. See annotations 6 and 7 to the Code section 86.29 in I. C. A. Our latest pronouncement is Bruner v. Klassi, 241 Iowa 1007, 44 N.W.2d 366. See also sections 86.30 and 86.33, Iowa Code, 1950 (I. C. A.). And whether the injury arose out of and in the course of employment is held to be a question of fact within the purview of this statute. Califore v. Chicago, St. P., M. & O. Ry. Co., 220 Iowa 676, 263 N.W. 29; Bruner v. Klassi, supra.

It may be conceded there was conflict in the evidence or at least that there may be difference of opinion as to the inferences to be drawn from it. But those differences were for the commissioner to resolve. We have not attempted to summarize the entire record or to state all the arguments of defendant bearing on the fact issue, deeming it proper to consider the evidence in the light most favorable to plaintiff. Brewer v. Central Constr. Co., 241 Iowa 799, 43 N.W.2d 131.

Our study of the case leads to the conclusion the decision of the district court must be affirmed and it is so ordered.— Affirmed.

All JUSTICES concur.